UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

WARNER CHILCOTT LABORATORIES
IRELAND LIMITED, *et al.*,      :

                        :    CIVIL ACTION NO. 08-6304 (WJM)

      Plaintiffs,

                        :    **CLERK'S OPINION GRANTING IN**

    v.                      **PART AND DENYING IN PART**

                        :    **MYLAN'S MOTION TO TAX COSTS**

IMPAX LABORATORIES, INC., *et al.*,

                        :

      Defendants.

_____:

WARNER CHILCOTT LABORATORIES
IRELAND LIMITED, *et al.*,      :

                        *:*    CIVIL ACTION NO. 09-2073 (WJM)

      Plaintiffs,

                        :

    v.                      :

MYLAN PHARMACEUTICALS INC., *et al.*

                        :

      Defendants.

_____:

WARNER CHILCOTT LABORATORIES
IRELAND LIMITED, *et al.*,      :

                        :    CIVIL ACTION NO. 09-1233 (WJM)

      Plaintiffs,

                        :

    v.                      :

IMPAX LABORATORIES, INC.

                        :

      Defendant.

_____:

      This matter comes before the Clerk on the motion of Defendants Mylan Pharmaceuticals

Inc. and Mylan Inc. (collectively "Mylan," "Defendants") for the taxation of costs pursuant to

Federal Rule of Civil Procedure 54(d) and Local Civil Rule 54.1.  Plaintiffs Warner Chilcott

Company, LLC, Warner Chilcott (US), LLC, and Mayne Pharma International Pty. Ltd.

("Mayne"), (collectively, "Warner Chilcott," "Plaintiffs") oppose this motion.

        In these three consolidated actions, Warner Chilcott alleged that Mylan and Impax

Laboratories, Inc. ("Impax") infringed its United States Patent No. 6,958,161 ("the '161

patent"), issued on October 25, 2005.   The '161 patent relates to modified release preparations

of doxycycline hyclate, marketed under the trademark of "Doryx."  Mayne was assigned the

'161 patent and Warner Chilcott has the exclusive rights to market and sell products covered

by the '161 patent.  The United States Food and Drug Administration ("FDA") approved

Mayne's 75 and 100 mg. tablets for the treatment of various bacterial infections on May 6,

2005 and its 150 mg. tablets on June 20, 2008.  In its complaints, Warner Chilcott has asserted

that Mylan and Impax infringed the '161 patent by filing Abbreviated New Drug Applications

("ANDA") with the FDA for generic delayed-release tablets containing a 75, 100 and 150 mg.

base of doxycycline hyclate before the expiration of the '161 patent.[1]

---

[1]        At one point, seven actions were consolidated for pre-trial purposes but only
Civil Action Nos. 08-6304, 09-1233 and 09-2073 proceeded to trial.  They are, chronologically
as filed:
1/ Civ. A. No. 08-6304, based upon the 75 and 100 mg. tablets of Mylan, Impax and the "Mutual
Defendants," i.e., Mutual Pharmaceutical Company, Inc., United Research Laboratories, Inc.,
and URL Pharma, Inc.  The Mutual Defendants were dismissed on November 10, 2009 and the
claims against Mylan and Impax proceeded to trial;
2/ Civ. A. No. 09-228, based upon the 75 and 100 mg. tablets of Sandoz Inc., dismissed on
March 7, 2012, before trial;
3/ Civ. A. No. 09-469, based upon the 75 and 100 mg. tablets of the "Actavis Defendants," i.e.,
Actavis Elizabeth, LLC, Actavis Inc. and Actavis Group HF, dismissed on April 14, 2011 before
trial;
4/ Civ. A. No. 09-1233, based upon the 150 mg. tablets of Impax, proceeded to trial;
5/ Civ. A. No. 09-2073, based upon the 150 mg. tablets of Mylan, proceeded to trial;
6/ Civ. A. No. 10-511, based upon the 150 mg. tablets of Sandoz, Inc., dismissed on March 7,
2012, before trial; and
7/ Civ. A. No. 10-1401, based upon the 75, 100 and 150 mg. tablets of Heritage Pharmaceuticals
Inc., dismissed on February 7, 2011, before trial.

After a seven-day bench trial, held on February 1 - 9, 2012, the Court entered Final Judgment [Dkt. Entry 302] on April 30, 2012, finding that Warner Chilcott's '161 patent was valid and that Mylan's and Impax's generic products did not infringe the '161 patent.[2]

Warner Chilcott, Impax and Mylan filed notices of appeal to the Federal Circuit on May 1, May 23, and May 30, 2012, respectively [Dkt Entries 303, 316, 318], and this Court's judgment was affirmed on September 7, 2012 [Dkt. Entry 339].

Mylan filed its motion to tax costs on May 29, 2012 [Dkt. Entry 317] and Impax's companion motion followed on May 30, 2012 [Dkt. Entry 319].  The Clerk addresses Mylan's motion herein and will issue a separate opinion and order on Impax's motion.

Mylan seeks the taxation of costs as a "prevailing party" within the meaning of Fed. R. Civ. P. 54(d), which provides in pertinent part:  "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d) (1).

Specifically, Mylan requests the taxation of the fees of:  trial and deposition transcripts ($62,003.05)[3]; witnesses ($8,024.60)[4]; exemplification and copies ($85,771.05); FedEx and courier services ($11,458.60); and computer-assisted legal research ($81,414.44), for a  total of $248,671.74.  [Dkt. Entry 331-3].  Plaintiffs object to taxation of almost all categories of costs. [Dkt. Entry 327].

[2]       Unless otherwise noted, references herein are to docket entries in Civ. A. No. 08-6304.

[3]       Mylan originally requested total transcript costs of $62,838.05 [Dkt. Entry 317-1], but reduced that amount by $835.00 to deduct the costs of depositions taken in another case and erroneously included in its motion.  [Dkt. Entry 331-3].

[4]       In its reply papers, Mylan also reduced requested witness fees by $360, from $8,384.60 [Dkt. Entry 317-3] to $8,024.60 [Dkt. Entry 331-2].

Preliminarily, the Clerk dismisses as moot Plaintiffs' argument that the decision on this motion should be deferred pending appeal. The Court denied this request, opposed by Defendants, on July 9, 2012 [Dkt. Entry 336] and in any event, the Federal Circuit has rendered its decision on appeal, affirming this Court.

## I.    Standards for Awarding Costs

Under Fed. R. Civ. P. 54(d) (1), a prevailing party is entitled to costs unless the Court otherwise directs. In patent litigation matters, including declaratory judgment actions regarding the validity of a patent and infringement actions, the definition of a "prevailing party" is governed by Federal Circuit law. Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1181-82 (Fed. Cir. 1996). To be a prevailing party, a party must obtain relief on the merits of its claim that materially alters the legal relationship between the parties by modifying its opponent's behavior in a way that directly benefits that party. Id. at 1182 (citing Farrar v. Hobby, 506 U.S. 103, 111-113 (1992)).

While the threshold issue of deciding prevailing party status is a matter of Federal Circuit law, the second inquiry, that of whether and how much to award, is a matter of regional circuit law. Id. at 1183. Therefore, the decision of whether to award costs to the prevailing party is a matter of Third Circuit law here.

In this Circuit, there is such a strong presumption that costs should be awarded to the prevailing party that, " '[o]nly if the losing party can introduce evidence, and the district court can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the prevailing party.' " Reger v. Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010) (quoting In re Paoli RR Yard PCB Litig., 221 F.3d 449, 468 (3d Cir. 2000)). The rationale

behind this presumption is that the denial of costs is tantamount to a penalty.  Id. at 288-289

(citing ADM Corp. v. Speedmaster Packaging Corp., 525 F.2d 662, 665 (3d Cir 1975)).

Despite this strong presumption, courts do not have unfettered discretion to grant

costs under Rule 54(d). The United States Supreme Court has ruled that absent express statutory

authorization, courts may reimburse only those costs which are enumerated in 28 U.S.C. § 1920.

Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987).  Title 28 U.S.C. § 1920

provides for the taxation of the following costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained
>     for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials
>     where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and
>     salaries, fees, expenses, and costs of special interpretation services under
>     section 1828 of this title.

The Supreme Court recently reinforced its Crawford Fitting holding in Taniguchi v.

Kan Pacific Saipan, Ltd., 132 S.Ct. 1997 (2012), whereby it limited the provision in §1920 (6)

for the "compensation of interpreters" to the cost of oral translation.  In denying the cost of

document translation, the Court noted that its decision was "in keeping with the narrow scope

of taxable costs." Id. at 2006.

In addition to Rule 54(d) and 28 U.S.C. § 1920, the Clerk's decision is guided by

Local Civil Rule 54.1, which "establishes the general procedures to be followed in those cases

where a party is entitled to recover costs" under § 1920.  Lite, N.J. Federal Practice Rules,

Comment 2 to Rule 54.1 (Gann 2013 ed.) at 234.

Therefore, while a prevailing party is entitled to costs under Rule 54(d), "those

costs often fall well short of the party's actual litigation expenses."  In re Paoli, 221 F.3d at 458.

5

Furthermore, despite the presumption of granting costs to a prevailing party, that party must provide sufficient information to carry its burden of showing that the costs sought fall within the limits of § 1920.  Romero v. CSX Transp., Inc. 270 F.R.D. 199, 201-202 (D.N.J. 2010).

Mylan is the prevailing party in this matter and Plaintiffs do not dispute this.  Even though final judgment was entered in Warner Chilcott's favor on the issue of validity, their '161 patent previously enjoyed a presumption of validity and therefore, the court's determination on validity did not materially alter the parties' relationship in a way that benefitted Plaintiffs. United Access Technologies, LLC v. Earthlink, Inc., Civil Action No. 02-272-MPT, 2012 WL 2175786, at *4 (D. Del. June 14, 2012).  Conversely, "[w]hen a finding of noninfringement occurs, the result is '[a] judicial declaration that one is free from another's right to exclude,' thereby 'alter[ing] the legal relationship between the parties.'"  Id. (quoting Manildra Milling, 76 F.3d at 1183).  Accordingly, the entry of final judgment in Mylan's favor on the issue of infringement conferred prevailing party status on Mylan.

Additionally, Mylan has followed the procedural requirements set forth in L. Civ. R. 54.1 and 28 U.S.C. § 1924 by timely filing and serving a verified Bill of Costs with copies of invoices appended [Dkt. Entries 317, 331].  As such, the Clerk will now examine the specific costs of which Defendants seek taxation, as outlined in the Declaration of Joshua Mack, Esq. ("Mack Decl.") [Dkt. Entry 317-2].

## II.   Fees for Transcripts, § 1920 (2)

### A.  Trial Transcripts

Mylan seeks reimbursement of the $13,744.50 cost of the trial transcripts which it states were used for several purposes, including post-trial briefing.  Plaintiffs do not object.

Fees for recorded transcripts are taxable under § 1920 (2) if the transcripts were

necessarily obtained for use in the case.  Local Civil Rule 54.1(g) (6) specifies:

> The cost of a reporter's transcript is allowable only (A) when specifically
> requested by the Judge, master, or examiner, or (B) when it is of a statement
> by the Judge  to be reduced to a formal order, or (C) if required for the record
> on appeal. . . Copies of transcripts for an attorney's own use are not taxable in
> the absence of a prior order of the Court.  All other transcripts of hearings,
> pretrials and trials will be considered by the Clerk to be for the convenience
> of the attorney and not taxable as costs.

The comments to L. Civ. R. 54.1 further provide:

> In submitting a Bill of Costs to the Clerk which includes a request to tax costs
> of transcripts, it is essential to specify how the transcript was used.  Absent
> evidence of a request from the Court for the transcript or proof by way of
> supporting affidavit that the transcript was used in a way that gives rise to an
> entitlement to a costs award, it is the practice of the Clerk to deny the request.

Lite, N.J. Federal Practice Rules, Comment 4d. to Rule 54.1 (Gann 2013 ed.) at 245.

In the Final Pretrial Order, the Court required that counsel submit trial briefs and

post-trial proposed findings of fact and conclusions of law with annotations to the trial

transcripts.  [Dkt. Entry 252-2 at 294].  Thus, the trial transcripts were requested by Magistrate

Judge Mark Falk, as specified in L. Civ. R. 54.1(g) (6).  Moreover, the Clerk has previously

found that trial transcripts are taxable when used to prepare findings of fact and conclusions

of law, particularly in a complex case such as this.  Merck Sharp & Dohme Pharms., SRL v.

Teva Pharms., USA, Inc., Civ. A. No. 07-1596, 2010 WL 1381413, at *3 (D.N.J. Mar. 30, 2010).

The trial transcripts were necessarily obtained for use in this case and therefore, the Clerk grants

this **$13,744.50** cost.

## B.  Deposition Transcripts

Mylan also requests, pursuant to § 1920 (2), the costs of the written transcripts of

21 depositions, as well as the videotaped version of some of those depositions, which

7

total $48, 258.55.  Warner Chilcott objects to granting any costs of six of the depositions and maintains that in general, the transcript costs are over-inclusive as to services.

Local Civil Rule 54.1(g) (7) limits the taxation of the costs of deposition transcripts to those "used at the trial":

> In taxing costs, the Clerk shall allow all or part of the fees and charges incurred in the taking and transcribing of depositions <u>used at the trial</u> under Fed. R. Civ. P. 32. Fees and charges for the taking and transcribing of any other deposition shall not be taxed as costs unless the Court otherwise orders (emphasis added).

However, 28 U.S.C. § 1920 more broadly allows for the taxation of "[f]ees for printed or electronically recorded transcripts <u>necessarily obtained for use in the case</u>."  28 U.S.C. § 1920 (2) (emphasis added).  In the case of <u>In re Baby Food Antitrust Litigation</u>, the Third Circuit held that a local court rule must yield to a federal rule where the two conflict, and interpreted "necessarily obtained" as allowing for the taxation of the cost of depositions used in deciding summary judgment motions.  166 F.3d 112, 138 (3d Cir. 1999).

Even before the ruling in <u>In re Baby Food</u>, this Court held that it has broad discretion to tax deposition costs under 28 U.S.C. § 1920.  <u>Hurley v. Atlantic City Police Dep't</u>, Civ. A. Nos. 93-260, 94-1122, 1996 WL 549298, at *5 (D.N.J. Sept. 17, 1996).  In <u>Hurley</u>, this Court stated that the failure of the prevailing party to introduce depositions into evidence at trial did not preclude a finding that they were "used" at  trial.  It went on to explain, "[a]n attorney needs deposition transcripts to prepare for both direct and cross-examination even if the transcripts are not directly introduced into evidence during the trial."  <u>Id</u>.

This Court has stated even more expansively that "[f]or the costs to be taxable, the depositions need not have been used at trial, and must only 'appear reasonably necessary to the parties in light of a particular situation existing at the times they were taken.'"  <u>Thabault v. Chait</u>,

Civ. A. No. 85-2441, 2009 WL 69332, at *7 (D.N.J. Jan. 7, 2009) (quoting Datascope Corp. v. SMEC, Inc., No. 81-3948, 1988 WL 98523, at *3 (D.N.J. Sept. 15, 1988).  See also, Smith v. Crown Equip. Corp., No. Civ. A. 97-541, 2000 WL 62314, at *3 (E.D. Pa. Jan. 13, 2000).

Plaintiffs object to taxing any costs of the depositions of James McGinity, Daniel Snider, Wayne Talton, David Wargo and the October 27, 2011 deposition of Dr. Martyn Davies.  Pls.' Br. at 7-8, [Dkt. Entry 327].  They assert, "[n]one of the depositions of these witnesses were used at trial for impeachment purposes, and they were not entered into evidence, or even designated for trial.  Mylan did not attempt to explain how the depositions of these witnesses were used during the litigation . . . ." Id. at 7.

Mylan replies that every deposition is important to the preparation for trial in complex litigation such as this, Defs.' Reply at 4, but fails to identify the particular significance of these contested depositions.  However, the Final Pre-Trial Order identifies James McGinity as Plaintiffs' expert witness on the issue of validity and David Wargo as a fact witness of Mylan. [Dkt. Entry 252 at 276, 271].  Also, Mylan, along with then co-defendants Impax and Sandoz, cites the October 27 deposition of Dr. Davies in its statement of contested facts in the Final Pre-Trial Order.  Id. at 215, 216.  Accordingly, the Clerk determines that these depositions were necessary for use in the case and taxes them to the extent allowed pursuant to the discussion below.

On the other hand, after reviewing the docket, the Clerk is at a loss to determine the roles of Daniel Snider and Wayne Talton in this litigation.  As stated in Romero, Defendants have "provided the Court with no information upon which the Court may differentiate between those depositions which were taken merely for investigatory purposes and those which appeared to

[Defendants] to be necessary for use in the case." 270 F.R.D. at 202. Therefore, the Clerk must deny all costs of the Snider and Talton depositions.

With regard to the remaining depositions, Warner Chilcott maintains that the only fees recoverable under § 1920 (2) and L. Civ. R. 54.1(g) (7) are the costs of the preparation of the transcript and the reporter. Other costs of expedited transcripts, litigation support services, DVD's, shipping and videotapes are, in their view, for the convenience of counsel and, according to Plaintiffs, their $30,490.80 cost is not taxable. Pls.' Br. at 8-12. The Clerk notes that Plaintiffs do not object to the cost of exhibits charged in the deposition invoices.

The Clerk agrees with Plaintiffs. First, on the issue of videotapes, all of those included by the movants duplicate the written transcripts taken in this case. The costs recoverable under § 1920 (2) may include the cost of videotaping depositions "as long as the use of the videotape was reasonably necessary to the trial." Garonzik v. Whitman Diner, 910 F. Supp. 167, 171 (D.N.J. 1995) (taxing the cost of videotapes presented as evidence and displayed to the court). However, when § 1920 (2) was amended in 2008 to include electronically recorded transcripts, the conjunction "or" was inserted, not "and." As such, the Clerk generally does not allow recovery of the costs of both the printed transcripts and the videotapes in the absence of a showing that both were necessarily obtained for use in the case. Merck Sharp & Dohme Pharm., 2010 WL 1381413 at *3 (citing Cherry v. Champion Int'l Corp., 186 F.3d 442 (4th Cir. 1999)). Necessity for use at trial means more than the convenience of the party or duplication. Cherry, 186 F.3d at 449.

The costs of videotaping depositions were disallowed by this Court when the videotapes were not played for the court or used to decide the summary judgment motion or for any other

purpose.  Pharm. Resources, Inc. v. Roxane Labs., Inc., Civ. A. No. 03-3357, 2008 WL 2951173,

at *5 (D.N.J. July 25, 2008).

Similar to the Pharm. Resources case, and in contrast to the Garonzik case, Mylan has

made no showing of the use of these videotapes which duplicate the written transcripts.

Defendants have failed their burden of showing that the videotapes were "necessarily obtained

for use in the case," as required under § 1920 (2).  Accordingly, all costs incurred in videotaping

these depositions are denied.

Plaintiffs correctly state that recoverable costs under § 1920 (2) include the cost of

reporters in addition to the cost of the preparation of transcripts, L. Civ. R. 54.1(g) (7), and

therefore, the Clerk taxes all fees for original transcripts and reporter appearance.  However,

the remaining fees for immediate rough ASCII and ASCII disks, condensed transcript, word

index, Realtime, med/tech copies, "invoice processing fee" (essentially, a late payment fee),

and expedited services (early morning pages, expedited copies and exhibits, Sunday surcharge),

are not taxable because they are not among those listed in § 1920 and are considered to be for

the convenience of counsel.

The costs of shipping and handling are not recoverable in this district.  Boyadjian v.

Cigna Cos., 994 F. Supp. 278, 281 (D.N.J. 1998) (denying costs of postage because they are not

listed in § 1920); Bollitier v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers,

735 F. Supp. 623, 629 (D.N.J. 1989) (denying taxation of costs of mailing); Hurley, 1996 WL

549298, at *4 (D.N.J. Sept. 17, 1996) (postage, delivery and messenger services fall under

attorney's fees, not § 1920).

With regard to ASCII, several courts have denied the taxation of the costs of ASCII disks

as being duplicative and merely for the convenience of counsel, particularly where regular

deposition copy was also received.  Harkins v. Riverboat Servs., Inc., 286 F. Supp. 2d 976, 980-81 (N.D. Ill. 2003); Nugget Distrib. Coop. of Am., Inc. v. Mr. Nugget Inc., 145 F.R.D. 54, 58 (E.D. Pa. 1992); Feinshreiber v. United States, No. 01-3628-Civ, 2002 WL 31084156, at *2 (S.D. Fla. Aug. 12, 2002).

The same is true with regard to the other fees for rough drafts, condensed transcripts, Realtime technology, and word indices, included in the movant's invoices.  Absent a showing of necessity, these types of litigation support costs are deemed to be for the convenience of counsel and therefore not taxable under § 1920 (2).  See e.g., Lewis v. D.R. Horton, Inc., 375 F. App'x 818, 828-30 (10th Cir. 2010) (affirming district court's cost award in which it deducted deposition costs of condensed transcript and computerized transcripts); Kidd v. Mando Am. Corp., 870 F. Supp. 2d 1297, 1299 (M.D. Ala. 2012) (deposition costs of condensed transcript, rough ASCII transcripts and depo drive not shown to be necessary were not taxable); United States ex rel. Davis v. U.S. Training Center, Inc., 829 F. Supp. 2d 329, 339 (E.D. Va. 2011) (denying costs of transcript drafts and realtime transcript services); Burton v. R.J. Reynolds Tobacco Co., 395 F.Supp.2d 1065, 1080 (D. Kan. 2005) (disallowing charges for keyword indices, ASCII disks, minuscripts, postage and delivery); Suchite v. Kleppin, No. 10-21166-CIV, 2012 WL 1933555, at *5 (S.D. Fla. Mar. 23, 2012) (added cost of condensed transcript is not taxable); Vistein v. Am. Registry of Radiologic Technologists, No. 1:05 CV 2441, 2010 WL 918081 (N.D. Ohio Mar. 10, 2010) (denying cost of keyword indices).

Finally, the inflated costs for expedited services have also been disallowed as a convenience of counsel rather than a necessary cost of suit.  See, e.g., Suchite, 2012 WL 1933555 at *5; Feinshreiber, 2002 WL 31084156, at *2 (applying a more reasonable rate than

requested expedited deposition transcript rate and allowing only $184.80 instead of $477.60). Rather than disallow the entire cost of expedited transcripts, as Plaintiffs urge, the Clerk reduces the rate to the regular prevailing rate.  The invoices of Ellen Grauer Court Reporting indicate a rate for "1 Certified Deposition" of $3.50 per page, and the TSG Reporting invoices show a rate of $3.25 per page for "Certified Transcript."  All expedited transcript costs were charged by either Ellen Grauer Court Reporting or Elisa Dreier Reporting Corp., whose regular rate is not discernible from the record.  Therefore, the Clerk will tax all expedited transcripts at the rate of $3.50 per page.

Applying all of the foregoing, the Clerk taxes the following transcript costs, in the order in which they appear in Exhibit D to the Mack Declaration [Dkt. Entry 317-3]:

| **Deponent** | **Taxed Amount** |
|---|---|
| **Arthur Kibbe, 4/22/10** | |
| Certified Transcript | $   776.75 |
| Exhibits | $   183.50 |
| | |
| **David Hayes, 11/18/10** | |
| 1 Certified Deposition | $   857.50 |
| | |
| **David Hayes, 11/19/10** | |
| 1 Certified Deposition | $   297.50 |
| | |
| **David Wargo, 1/13/11** | |
| Certified Transcript | $   633.75 |
| Exhibits | $   399.60 |
| | |
| **Tina DeVries, 1/21/11** | |
| 1 Certified Deposition | $   444.50 |
| | |
| **John Kirsch, 2/10/11** | |
| Certified Transcript | $   461.50 |
| Exhibits | $   103.50 |

13

| **Deponent** | **Taxed Amount** |
|---|---|
| **James McGinity, 4/15/10** | |
| 1 Certified Deposition | $   647.50 |
| Exhibits | $   147.00 |
| | |
| **Martyn Davies, 7/8/11** | |
| 1 Certified Deposition (258 pp. @ $3.50/p.) | $   903.00 |
| | |
| **Cynthia Ciliberto, 8/8/11** | |
| Certified Transcript | $   471.25 |
| Exhibits | $    29.10 |
| | |
| **Nicholas Winograd, 10/25/11** | |
| 1 Copy of Transcript (358 pp. @ $3.50/p.) | $ 1,253.00 |
| | |
| **Edward Elder, 10/19/11** | |
| 1 Copy of Transcript (191 pp. @ $3.50/p.) | $   668.50 |
| | |
| **Graham Buckton, 10/14/11** | |
| 1 Copy of Transcript (376 pp. @ $3.50/p.) | $ 1,316.00 |
| | |
| **Neil Everall, 11/2/11** | |
| 1 Copy of Transcript (427 pp. @ $3.50/p.) | $ 1,494.50 |
| | |
| **Martyn Davies, 10/26/11** | |
| Original + 1 Certified Deposition | $ 1,685.25 |
| Reporter's Appearance | $   150.00 |
| Exhibits | $   684.00 |
| | |
| **Martyn Davies, 10/27/11** | |
| 1 Certified Deposition | $ 1,316.00 |
| Exhibits | $   257.00 |
| | |
| **Martyn Davies, 10/28/11** | |
| 1 Certified Deposition | $ 1,137.50 |
| Exhibits | $   369.00 |
| | |
| **Arthur Kibbe, 12/5/11** | |
| 1 Copy of Transcript (320 pp. @ $3.50/p.) | $ 1,120.00 |
| | |
| **James McGinity, 11/11/11** | |
| 1 Certified Deposition (293 pp. @ $3.50/p.) | $ 1,025.50 |
| Exhibits | $   295.00 |

14

| **Deponent** | **Taxed Amount** |
|---|---|
| **Arthur Kibbe, 12/4/11**<br>1 Copy of Transcript (385 pp. @ $3.50/p.) | $ 1,347.50 |
| **Cynthia Ciliberto, 8/8/11**<br>Exhibits | $    29.10 |
| **Total:** | **$20,503.80** |

Combining the allowed costs of $13,744.50 for trial transcripts and $20,503.80 for deposition transcripts (consisting of a reduction of $27,754.75), the Clerk taxes a total of **$34,248.30**, pursuant to § 1920 (2).

### III.    Fees for Witnesses, § 1920 (3)

Mylan requests witness fees, pursuant to § 1920 (3), in connection with the trial attendance of its expert witnesses, Drs. Graham Buckton, Ed Elder, Neil Everall and Nick Winograd.  The total requested cost of $8,024.60 consists of $760.00 of statutory attendance fees, $5,007.60 of hotel charges, and $2,257.00 of meals.

Local Civil Rule 54.1(g) incorporates 28 U.S.C. § 1821 by reference, and therefore, allowable witness fees are controlled by § 1821:

> (1) The fees of witnesses for actual and proper attendance shall be allowed, whether such attendance was voluntary or procured by subpoena. The rates for witness fees, mileage and subsistence are fixed by statute (see 28 U.S.C. § 1821).  Witness fees and subsistence are taxable only for the reasonable period during which the witness was within the District.  Subsistence to the witness under 28 U.S.C. § 1821 is allowable if the distance from the courthouse to the residence of the witness is such that mileage fees would be greater than subsistence fees if the witness were to return to his or her residence from day to day.

L. Civ. R. 54.1(g) (1).

Section 1821 of Title 28 provides for the payment of witnesses' fees and allowances for their attendance in federal court.  28 U.S.C. § 1821(a) (1).  Subsection (b) therein allows a

$40 per day attendance fee "for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."  Subsection (d) allows for a subsistence fee for a required overnight stay, provided that the per diem rate does not exceed the allowance established by the Administrator of General Services ("GSA"), pursuant to 5 U.S.C. § 5702(a), in the area of attendance.  The applicable GSA per diem rate for the Newark area, during February 2012, was $120 for lodging and $61 for meals and incidental expenses, except for the first and last day of travel, for which the meal allowance was $45.75.[5]

Specifically, Mylan requests witness fees as follows:  Dr. Buckton -  five days attendance, 11 nights of hotel stay and meals; Dr. Elder – five days attendance, nine days of hotel stay and meals; Dr. Everall – four days attendance, 11 nights of hotel stay and meals; and Dr. Winograd – five days attendance, eight nights of hotel stay and meals.[6]  [Dkt. Entry 317-3], Mack Decl., Ex. A.  The requested hotel fees include a 7% tax on the GSA allowance of $120 per day.

Plaintiffs point out that Drs. Buckton, Elder and Everall testified on only one day and Dr. Winograd testified on two days of trial.  The docket reflects that Dr. Everall testified on February 6, Drs. Buckton and Elder testified on February 7 and Dr. Winograd testified on February 6 and 7, 2012.  [Dkt. Entries 266, 268].  Warner Chilcott therefore argues that Mylan seeks fees in excess of what is allowable for "actual and proper attendance," as specified under

---

[5]     Section 1821 also provides for the actual expenses of travel, at subsection (c) therein, but travel expenses were not requested in this application.

[6]     In its reply, Mylan reduced requested attendance fees from $1,120.00 to $760.00. [Dkt. Entry 331-3].

16

L. Civ. R. 54.1(g) (1), and that reimbursable fees should be reduced to $1,227.00.  Pls.' Br. at

13-14.  Plaintiffs also take issue with Mylan's inclusion of the 7% tax.  Id. at 13.

Mylan counters that that it was "both necessary and proper" for their infringement

experts to attend trial not only on the days on which they testified, but the days preceding

their testimony, including the first three days of trial when it was necessary for them to listen to

the testimony of Plaintiffs' infringement expert, Dr. Davies.  Defs.' Reply at 2.

The United States Supreme Court has interpreted "attendance" in § 1821 to mean

"necessary attendance."  Hurtado v. United States, 410 U.S. 578, 583-87 (1973).  A witness is

in necessary attendance in court when he is ready and available to testify.  Id. at 584.  A party

may recover witness fees for days on which the witness attended the trial before actually

testifying, but only if the witness was holding himself available to testify.  Louisiana Power &

Light Co. v. Kellstrom, 50 F.3d 319, 335 (5th Cir. 1995) (citing Nissho-Iwai Co., Ltd. v.

Occidental Crude Sales, Inc., 729 F.2d 1530, 1552-53 (5th Cir. 1984)).

A similar situation existed in the case of Pan Am. Grain Mfg. Co. v. Puerto Rico

Ports Auth., where the prevailing defendant sought $120 for three days of statutory witness fees,

even though the witness only testified on two days.  193 F.R.D. 26 (D.P.R. 2000), aff'd,

295 F.3d 108 (1st Cir. 2002).  The court indicated that the relevant inquiry was the witness' role

on the day that he did not testify.  The movant had indicated that the witness was "available for

consultation during the three days."  Id. at 36.  The court stated that "[a]ttendance for the purpose

of consultation is not necessary attendance  within the meaning of 28 U.S.C. § 1821(b)."  Id.

The same analysis was used to reduce the requested $360 attendance fee for another witness who

attended trial on nine days, testifying on only one day and being available for consultation on the

17

other eight days.  The court reiterated, "statutory attendance fees exist to compensate witnesses for their attendance at trial, not to compensate experts for their advice."  Id.  For both witnesses, the court granted the $40 per diem fee only for those days on which the witnesses testified and for  the days dedicated to traveling to and from the courthouse.

Mylan has not refuted Plaintiffs' assertion that "Mylan was well aware of the witness order and schedule when witnesses would testify." Pls.' Br. at 13, and does not contend that its experts were holding themselves available to testify on the days preceding their actual testimony.  In the Clerk's view, these witnesses were making themselves available for consultation, not to testify.  The Clerk also notes that Mylan received not only rough draft transcripts of the trial proceedings two hours after the close of the day but Realtime feed, the cost of which Plaintiffs have not contested.  It was not necessary for Mylan's experts to be present in court to hear the testimony of Plaintiffs' expert, Dr. Davies on each day that he testified, as Mylan asserts.  Accordingly, the Clerk concludes that attendance of Mylan's experts was necessary only on the days on which they testified.

In addition to the necessary attendance at trial, § 1821(b) allows an attendance fee for the days spent traveling to and from the courthouse.  Per the Final Pre-Trial Order, Dr. Buckton and Dr. Everall reside in the United Kingdom and Drs. Elder and Winograd are residents of Madison, Wisconsin and University Park, Pennsylvania, respectively.  [Dkt. Entry 252-2 at 277-78]. Therefore, an additional two days will be permitted for their travel.  Accordingly, the Clerk allows a statutory attendance fee of $120 (3 x $40) each for Drs. Buckton, Elder and Everall and a fee of $160 (4 x $40) for Dr. Winograd.  Total attendance fees of $520 are awarded.

Also taxable are subsistence fees for the period during which Mylan's experts were reasonably within the District. L. Civ. R. 54.1(g) (1).   The Clerk grants the fees of two nights

of hotel accommodations for Drs. Buckton, Elder and Everall and three nights for Dr. Winograd at the GSA rate of $120 per diem.  Mylan correctly observes that the 7% lodging tax is reimbursable pursuant to Federal Travel Regulation § 301-11.27.  Frequently Asked Questions, Per Diem, U.S. General Services Administration, http://www.gsa.gov./portal/content/104208 (last reviewed Feb. 6, 2013).  Therefore, $75.60 shall be added to this sum of $1,080, for a total of $1,155.60.

The Clerk also taxes the cost of one day of meals at the rate of $61/day and two travel days of meals at the rate of $45.75/day for Drs. Buckton, Elder and Everall ($152.50 x 3) and two days of meals at $61/day and two travel days of meals at $45.75/day ($122 + $91.50) for Dr. Winograd.  The reimbursable cost of meals is $671.00.

Combining the $520 statutory attendance fees with subsistence fees of $1,155.60 and $671.00, the total witness fees which are allowed amount to **$2,346.60**.

**IV.   Costs of Exemplification and Making Copies, § 1920 (4)**

**A.  Photocopies**

Mylan seeks taxation of the $25,896.05 cost of photocopies, consisting of in-house copying fees of $138.35 and outside vendors' fees of $25,757.70.  [Dkt. Entry 317-3], Mack Decl., Ex. A at 19.  Mylan explains that all of the photocopies were made for exhibits and demonstratives for trial and thus, were "necessarily obtained for use in the case," as required under § 1920 (4).  Defs.' Br. at 4.

Plaintiffs argue that Defendants have not met the prerequisites of L. Civ. R. 54.1(g) (9) nor explained the use of the copies and therefore, the entire amount sought should be denied.  Pls.' Br. at 14-15.  Alternatively, Warner Chilcott contends that the costs of items such as file folders, tabs, and binders are not taxable.  Id. at 15.

As Plaintiffs point out, our local court rule imposes a two-part condition for the taxation of copies:

> The fees for exemplification and copies of papers are taxable when (A) the documents are admitted into evidence or necessarily attached to a document required to be filed and served in support of a dispositive motion, and (B) they are in lieu of originals which are not introduced at the request of opposing counsel.  The cost of copies submitted in lieu of originals because of convenience to offering counsel or his or her client is not taxable.  The cost of copies obtained for counsel's own use is not taxable.

L. Civ. R. 54.1(g) (9).

However, this Court has previously allowed the taxation of the cost of copies without strict adherence to the dual requirements of L. Civ. R. 54.1(g) (9).  In Hurley, the court noted that departure from the local rule would be permissible, although only to the extent consistent with § 1920 (4). 1996 WL 549298, at *3 n.5.  See also Thabault, 2009 WL 69332, at *13-14; Reichhold v. U.S. Metals Ref. Co., Civ. A. No. 03-453, 2009 WL 3761828, at *4 (D.N.J. Nov. 6, 2009).  This is, in fact, the analysis performed by the Third Circuit in the In Re Baby Foods case when it reconciled apparent conflicts between the local court rule and § 1920 (2).

Accordingly, this Court requires only satisfaction of the test of § 1920 (4), i.e., that the copies have been "necessarily obtained for use in the case."  The Clerk must determine the reason for these materials and deny taxation if they were made merely for counsel's convenience.  Thabault, 2009 WL 69332, at * 13-14.  However, as this Court stated in Thabault, "[c]osts are taxable under this provision 'even if the documents are not offered into evidence at trial.'"  Id. at 14, quoting Hurley, 1996 WL 549298, at *3.

This was a complex patent litigation which centered around the issue of whether Defendants' ANDA product had a stabilizing coat between its doxycycline hyclate core and

its delayed release coating, so as to infringe Plaintiffs' '161 patent.  Five different scientifically-approved methods of testing were used to prove non-infringement by Defendants' product.  Mylan submitted hundreds of trial exhibits.  [Dkt. Entries 272-1, 288].  Moreover, the Final Pre-Trial Order required that a party intending to use demonstrative exhibits with a witness produce a copy of  those exhibits to opposing counsel in advance of the witness' testimony.  [Dkt. Entry 252-2 at 287].  Therefore, voluminous photocopying was necessary in this complex litigation, as in Thabault.  The Clerk will not require a detailed itemization of the copies, but is satisfied with Mylan's explanation that all of the photocopies were made for exhibits and demonstratives for trial rather than for the convenience of counsel.

 The in-house copying cost, consisting of 2,767 copies made at the rate of $.05 per page, [Dkt. Entry 317-3], Mack Decl., Ex. A at 19, is modest and charged at a very reasonable rate and the entire **138.35** cost is allowed.

 With regard to the outside vendors' charges, totaling $25,896.05, [Dkt. Entry 317-3], Mack Decl., Ex. E., the bulk of this cost, or approximately $20,000, is for reconstructed blowbacks and colors blowbacks.  The reconstructed blowbacks were charged at the rate of $.12 per page and most of the color blowbacks were charged at the rate of $.89 per page.  A small percentage of this cost consists of high gloss color blowbacks charged at the rate of $1.25 per page.  In the case of Interfaith Community Org. v. Honeywell, Int'l, the Third Circuit noted that most courts find the rate of $.10 to $.15 per black and white copy to be appropriate and pointed out the $.10 per page rate used by the Third Circuit, L.A.R. 39.3(c).  426 F.3d 694, 717 (3d Cir. 2005).  The Circuit Court also commented that color copies are obviously more expensive than black and white ones.  Id. at n.20.  The Clerk finds the rates

of these outside vendors to be acceptable, as Warner Chilcott has not contested the rates or shown them to be exorbitant or outside the range of market price.

However, Plaintiffs correctly observe that the outside vendors' invoices include fees for items such as slip sheets, tabs, binders, folders, redweld file pockets and labels.  These charges constitute attorney's overhead and as such, are not taxable.  Yong Fang Lin v. Tsuru of Bernards, LLC, Civ. A. No. 10-2400, 2011 WL 2680577, at *5 (D.N.J. July 8, 2011) (disallowing cost of exhibit binders as general overhead cost); Laura P. v. Haverford School Dist., Civ. A. No. 07-5395, 2009 WL 1651286, at *9 n.10 (E.D. Pa. June 12, 2009) (same); Close-Up Int'l, Inc. v. Berov, Civ. A. No. 02-CV-2363, 2007 WL 4053682, at *11 (E.D.N.Y. Nov. 13, 2007) (denying costs of trial exhibit binders and tabs as being subsumed in attorney's fees) and cases cited therein.  Accordingly, such fees will be disallowed.

Also included in the vendors' invoices are charges that must be disallowed under the Third Circuit's recent decision in the case of Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158 (3d Cir.), cert.denied, 133 S. Ct. 233 (2012).  The Race Tires case concerned an electronic discovery consultant's charges for collecting, preserving, processing and indexing electronically stored information ("ESI"), keyword searching of ESI, file conversion and scanning paper documents to create electronic images.  Id. at 167.  The Court considered whether these expenses were taxable as the "cost of making copies of any materials" under § 1920 (4) and concluded that only the costs of scanning hard copy documents, converting native files to TIFF and transferring VHS tapes to DVD were recoverable as the costs of making copies.  Id.  at 171.

Therefore, on the basis of the Race Tires case, the Clerk denies the $187.50 cost in the Teris invoice of 12/30/2011 for "Tech Time: Time to prepare 2 large PDF's from MYL-DX

22

Production @ $125/hour," as well as the charges in the Teris invoice of 1/19/2012 for

"Volume Creation @ $25/disk" ($100.00) and for "Mid-Level Tech Time (Manually Create

Custom Load File, Data Analysis, and Custom Reporting @ $175/hour) Tech Time Purpose:

Combining PDFs" ($43.75).  Finally, the Clerk also deducts the non-specific $500.00 fee in the

Teris invoice of 1/24/2012 for "Special Handling Time (non electronic) @ $100/hr."

     Based upon the foregoing, the following outside vendor costs are taxed, in the order in

which they appear in Exhibit E to the Mack Declaration:

| **Invoice** | **Taxed Amount** |
|---|---|
| *Teris Invoice # 85188 of 1/11/2012:* | |
| Reconstructed Blowbacks @ $.12/page | $   247.08 |
| Blowbacks -  Color @ $.99/page | $   510.84 |
| *Teris Invoice # 85352 of 1/19/2012:* | |
| Convert TIFF to PDF or PDF to TIFF @ $.04/page | $     12.12 |
| *Teris Invoice # 85421 of 1/23/2012:* | |
| Reconstructed Blowbacks @ $.12/page | $   549.96 |
| Blowbacks -  Color @ $.89/page | $   582.95 |
| *Teris Invoice# 85456  of 1/24/2012:* | |
| Reconstructed Blowbacks @ $.12/page | $ 6,622.80 |
| Blowbacks - Color @ $.89/page | $10,233.22 |
| Blowbacks – High Gloss Color @ $1.25/page | $ 1,140.00 |
| | |
| Teris Sub-Total: | $19,898.97 |

| **Invoice** | **Taxed Amount** |
|---|---|
| Sales Tax (7.75%) on Teris Sub-Total: | $ 1,542.17 |
| Teris Total: | $21,441.14 |
| *Driven Inc. Invoice # 57551 of 2/16/2012:* | |
| Color Blowbacks @ $.65 each, incl. 8.875% tax | $ 861.96 |
| **Combined Teris and Driven Inc. Total:** | **$22.303.10** |

Adding allowed outside vendor costs of $22,303.10 to the taxed in-house copying cost of $138.35 results in a total cost of copies, pursuant to § 1920 (4), of **$22,441.45**.

### B. Exemplification

Mylan also seeks the $59,875.00 cost of demonstratives, pursuant to § 1920 (4), asserting that "each of Mylan's five testifying witnesses used demonstrative exhibits to aid the Court's appreciation and understanding of the evidence and to ensure efficient witness examination regarding complex issues." Defs.' Br. at 5. This cost from Advanced Courtroom Technologies, Inc. is broken down on the invoice into the categories of "exhibit prep & video services," "project management," and "graphic design & consultant." [Dkt. Entry 317-3], Mack Decl., Ex. F.

Plaintiffs argue that this entire cost should be denied because Defendants have not shown how the demonstratives were necessarily obtained for use in the case and because the visual aids were not admitted into evidence, as required under L. Civ. R. 54.1(g) (10).

The Clerk's task is to determine whether this cost is taxable as "exemplification" under § 1920 (4). Unfortunately, to date, the Third Circuit has neither defined nor applied the term

"exemplification" in the context of § 1920 (4).  The Circuit Court side-stepped this issue in the Race Tires case, where it analyzed the costs of an electronic discovery vendor's services as potentially taxable costs of "copies," within  the meaning of § 1920 (4).  674 F.3d  at 166. In doing so, it noted the divergence in its sister circuits on this topic, with the Seventh Circuit applying a broader definition of "exemplification" than the Sixth and other Circuits.

In the case of Cefalu v. Village of Elk Grove, 211 F.3d 416 (7th Cir. 2000), the Seventh Circuit adopted the ordinary meaning of the term as the "act of illustration by example," Id. at 427, and taxed the $27,000 cost of a computerized multi-media system used to present exhibits to the jury.  The circuit court rejected the district court's distinction between the physical preparation of trial exhibits, which it deemed taxable as exemplification, and the means of presenting exhibits to the jury, which it found did not qualify as exemplification.  In reversing the district court, the circuit court stated, "[a]llowing fees for the cost of preparing the transparency but not for renting the projector would in this sense be a highly formalistic distinction, as each is key to the illustrative function of the exhibit."  Id. at 428.  It held, "[s]o long as the means of presentation furthers the illustrative purpose of an exhibit, we believe it is potentially compensable as exemplification."  Id.

By contrast, in Kohus v. Toys "R" Us, Inc., 282 F.3d 1355 (Fed. Cir. 2002), the Federal Circuit, applying Sixth Circuit law, adopted the narrow definition found in Black's Law Dictionary 593 (7th Ed. 1999) of "[a]n official transcript of a public record, authenticated as a true copy for use as evidence."  Id. at 1359.  It held that a video exhibit that depicted the allegedly infringing product did not constitute "exemplification," and denied its $12,950 cost.

In the aftermath of the Crawford Fitting case, the Federal Circuit also predicted that the First and Eighth Circuits would apply the narrow interpretation of "exemplification."

25

Summit Tech., Inc. v. Nidek Co., 435 F.3d 1371, 1377-78 (Fed. Cir. 2006) (denying all costs of trial exhibits, including computer animations, videos, Powerpoint presentations, and graphic illustrations); Kinzenbaw v. Case LLC, No. 05-1483, 2006 WL 1096683, at *3-4 (Fed. Cir. Apr. 26, 2006) (denying not only costs of trial consulting service, but of physical models and trial boards because they did not fall within the narrow definition of Black's Law Dictionary).

Lacking a clear directive from the Third Circuit, the Clerk must take cues both from the Circuit Court's analysis in Race Tires and the United States Supreme Court's most recent application of § 1920 in the Taniguchi case.  Both cases undoubtedly proscribe exorbitant cost awards which contravene the Congressional intent in enacting a statute that limits costs to specified categories.  However, the Clerk is not inclined to adopt a definition as restrictive as that in Black's Law Dictionary, thereby virtually eliminating the costs of all demonstrative evidence.  That being said, certain qualifications to the broader definition of that which "furthers the illustrative purpose" appear warranted.

As noted above, in Taniguchi, the Supreme Court concluded that the provision in § 1920 (6) for the "compensation of  interpreters" allowed the costs of oral translation, but not document translation.  To define "interpreters," the Court first examined definitions in commonly used dictionaries, like the American Heritage Dictionary and the Oxford English Dictionary, stating that "[w]hen a term goes undefined in a statute, we give the term its ordinary meaning."  132 S. Ct. at 2002.  The Court looked for the sense of the word that was "more natural."  Id. at 2004.  Applying this type of analysis to the present case, the Clerk adopts the ordinary, more natural definition of "exemplification," used by the Seventh Circuit, as that which serves an illustrative purpose, and not that in Black's Law Dictionary.

26

In its discussion, the <u>Taniguchi</u> Court reiterated its restrictive reading of § 1920 that it enunciated fifteen years earlier in the <u>Crawford Fitting</u> case:

> [W]e have never held that Rule 54(d) creates a presumption of statutory construction in favor of the broadest possible reading of the costs enumerated in § 1920.  To the contrary, we have made clear that the "discretion granted by Rule 54(d) is not a power to evade" the specific categories of costs set forth by Congress. <u>Crawford Fitting</u>, 482 U.S. at 442.  "Rather," we have said, "it is solely a power to decline to tax, as costs, the items enumerated in § 1920." <u>Ibid.</u>

132 S. Ct. 2006.  In <u>Crawford Fitting</u>, the Supreme Court had denied the recovery of expert witness fees under § 1920 (3), in excess of the statutorily authorized amounts of § 1821. 482 U.S. 437.

Similarly, in the <u>Race Tires</u> case, the Third Circuit cited the Supreme Court's prior observation that "'Congress meant to impose rigid controls on cost-shifting in federal courts.'" 674 F.3d at 164 (quoting <u>Crawford Fitting</u>, 482 U.S. at 444), and criticized taxation decisions that are "untethered from the statutory mooring."  674 F.3d at 169.

In <u>Race Tires</u>, the Court noted preliminarily that the electronic discovery vendor's charges for hard drive imaging, data processing, keyword searching and file format conversion did not qualify as fees for "exemplification" under § 1920 (4) because they did not arise from the production of illustrative evidence or authentication of public records, the two definitions of exemplification discussed above, given by the Seventh and Sixth Circuits, respectively.  <u>Id.</u> at 166.

The Court then considered whether these expenses were taxable as the "cost of making copies of any materials" under § 1920 (4).  The Court dispelled arguments in favor of taxation based upon the necessity of experts due to the highly technical nature of ESI and the resulting

27

cost-savings.  It reasoned that the services leading up to the production of electronic copies did

not constitute "making copies" and held that only the costs of scanning and file format

conversion were recoverable as the costs of making copies under § 1920 (4).  Id.  at 171.

In reaching its decision, the Third Circuit distinguished between the intellectual effort

required to produce documents and the actual physical preparation thereof and concluded that it

was possible to isolate the costs incurred just for the physical preparation of ESI.  It relied upon

the Ninth Circuit's decision in Romero v. City of Pomona, 883 F.2d 1418 (9th Cir. 1989),

overruled in part on other grounds by Townsend v. Homan Consulting Corp., 929 F.2d 1358,

1363 (9th Cir. 1991) (en banc), from which it quoted:

> As expressed by one court, "[s]ection 1920 (4) speaks narrowly of '[f]ees for
> exemplification and copies of papers,' suggesting that fees are permitted only
> for the physical preparation and duplication of documents, not the intellectual
> effort involved in their production."  Romero v. City of Pomona, 883 F.2d 1418,
> 1428 (9th Cir. 1989), overruled in part on other grounds by Townsend v. Holman
> Consulting Corp., 929 F.2d 1358, 1363 (9th Cir. 1991) (en banc).  Neither the
> degree of expertise necessary to perform the work nor the identity of the party
> performing the work of "making copies" is a factor that can be gleaned from
> § 1920 (4).

Race Tires, 674 F.3d at 169.

In the Romero case, the Ninth Circuit denied the $146,926.94 cost of expert research

expenses incurred in assembling and preparing the contents of the movants' trial exhibits.

The court limited § 1920 (4) exemplification to the actual physical production of the exhibits,

reasoning that "[w]ere the term exemplification read any broader, it could well swallow up

other statutory provisions of the Code and rules, such as the prohibition against the award of

attorney's fees or expert witness fees in the normal case,"  such as the limited statutory witness

attendance fee of § 1821, then $30.  883 F.2d at 1428.  It continued, "[t]his is because any

document 'necessarily produced' for purposes of the litigation will contain somebody's intellectual input, be it a lawyer, an expert witness or a lay witness."  Id.

In a recent case applying the Romero standard embraced by the Third Circuit, the court denied the $5,516 cost of "design services" used to create the demonstratives on the ground that the costs of the intellectual efforts in designing demonstratives are not taxable.  IMRA America, Inc. v. IPG Photonics Corp., No. 06-15139, 2012 WL 6553523, at *5 (E.D. Mich. Dec. 14, 2012).  The court cited this Court's prior recognition in the case of Merck Sharp & Dohme Pharms., SRL, 2010 WL 1381413, at *5, that demonstratives are especially necessary to the understanding of intellectual property cases, and therefore, may be necessarily obtained for use in the case, but limited the costs to those resulting from the physical preparation of demonstratives.  2012 WL 6553523 at *5.

The Romero holding was also the basis for denying the $57,185 cost of an animation which the opponent argued was a disguised expert witness fee in Pinasco v. California, No. CIV S 09-0777, 2012 WL 6589801, at *2 (E.D. Cal. Dec. 17, 2012).  The court noted that the entire expense was itemized as either "retainer" or "fees for preparation" and stated that "[r]etainers and fees are the very 'intellectual efforts' the Romero court found to be outside the scope of exemplification costs permitted by 28 U.S.C. § 1920."  Id.

Other courts which have analyzed the "exemplification" issue by contrasting the physical preparation of demonstrative exhibits with the intellectual effort required to create exhibits have denied the costs of technical support as well as equipment rental.  See, e.g., Plantronics, Inc. v. Aliph, Inc., No. C 09-01714, 2012 WL 6761576, at *9-10 (N.D. Cal. Oct. 23, 2012) (disallowing $7,257.30 cost of technical support and equipment rental to present visual aids during Markman hearing) and cases cited therein.

The Clerk previously declined to apply the <u>Romero</u> holding and allowed the entire cost of visuals in the case of <u>In re Jacoby Airplane Crash Litigation</u>, Civ. A. No. 99-6073, 2008 U.S. Dist. LEXIS 118037, at *18-19 (D.N.J. Oct. 7, 2008).  However, now, due to the Third Circuit's espousal of the <u>Romero</u> dichotomy in the <u>Race Tires</u> case, the Clerk is compelled to deny the costs incurred in the intellectual effort that precedes the actual physical preparation of demonstratives.

Our local court rule also shows a clear intent to restrict the costs of demonstratives:

> The **reasonable** expense of **preparing** visual aids including, but not limited to, maps, charts, photographs, motion pictures and kindred material, is taxable as costs when such visual aids are admitted into evidence.  It is advisable to obtain a court order at a pretrial conference before incurring the expense of preparation of such visual aids.  Expenses incurred in the preparation of models are not taxable as costs even though the models are admitted into evidence without obtaining a court order before incurring the expense.

L. Civ. R. 54.1(g) (10) (emphasis added).  Several safeguards against excessive costs are built into this rule, i.e., the requirements that the expenses be reasonable and that the visual aids have been admitted into evidence and the recommendation of obtaining prior court approval.  Most importantly, the rule speaks in terms of "preparing" visual aids and thus, reflects the <u>Romero</u> distinction between physical preparation and intellectual efforts.

With the foregoing in mind, the Clerk turns now to the specific costs here at issue, all shown on one invoice from Advanced Courtroom Technologies, Inc.  [Dkt. Entry 317-3], Mack Decl., Ex. F.  The first category of costs, "EXHIBIT PREP & VIDEO SERVICES," is detailed as "Image Conversion – convert pdf to tiff"  and consists of 4 hours of services at the rate of $195.00 per hour.  Under the authority of the <u>Race Tires</u> case, the Clerk allows this **$780.00** cost of file format conversion.

The second category of charges, entitled "PROJECT MANAGEMENT," is detailed as "Project Management – Collect existing data onto the server, [____] mm," and is also charged at the rate of $195.00 per hour.  The 12.75 hours of service total $2,486.25.  The Clerk must deny these charges which are akin to the data processing charges which the Third Circuit deemed non-taxable in the Race Tires case.

The final category of the charges, which constitutes the bulk of the requested total, or $56,608.75, is "GRAPHIC DESIGN & CONSULTANT."  This category is made up of two separate types of fees, one for "Design/Revisions/Telcons/Proofing," billed at $225.00 per hour, and the other for "Graphic Design – Consultant," billed at $245.00 per hour.

At the outset, the Clerk notes that Defendants have not described the demonstratives, but state only that "each of Mylan's five testifying witnesses used demonstrative exhibits to aid the Court's appreciation and understanding of the evidence and to ensure efficient witness examination regarding complex issues."  Defs.' Br. at 5.  Nor are the demonstratives described in the invoice of Advanced Courtroom Technologies, Inc.  The Clerk can only surmise that they consist, at least in part, of slides used by Defendants' experts.  [Dkt. Entry 272-1].

Furthermore, the Clerk must deny all of these costs based upon the foregoing analysis of Race Tires, Romero, and its progeny.   As noted in IMRA America and Pinasco, these professional fees for design are akin to expert fees and constitute the intellectual effort rejected in Romero and Race Tires as well.  As in the case of In re Ricoh Co., Ltd. Patent Litigation, No. C 03-02289 JW, 2010 WL 8961328, at *7 (N.D. Cal. Sept. 29, 2010), where the court denied $224,486.35 of requested exemplification costs, the costs sought here appear to be associated with the intellectual creation of complex visual aids.  This conclusion is

warranted by the use in the invoice of the term "consultant."  As stated by the court in the

IMRA America case, "intellectual efforts in designing demonstratives is [sic] not taxable."

2012 WL 6553523, at *5.  Defendants have not met their burden of establishing the cost of the

actual physical production of the demonstratives.  This $56,508.75 in fees is disallowed.[7]

In sum, a total of **$23,221.45** ($22,441.45 + $780.00 ) is taxed pursuant to § 1920 (4).

## V.    Costs of Computer-Assisted Legal Research

Mylan requests reimbursement of the $81,414.44 cost of legal research.  The supporting

case law upon which Defendants rely is criticized by Plaintiffs, who cite contradictory rulings by

this Court.  Warner Chilcott also finds fault with the Defendants' documentation, an issue which

the Clerk need not reach.

While a handful of cases supports the proposition that the cost of computerized legal

research falls within 28 U.S.C. § 1920, the bulk of authority holds otherwise.  Gary Knapp,

M.B.A., J.D., Annotation, *Recoverability of cost of computerized legal research under*

*28 U.S.C.A. § 1920 or Rule 54(d), Federal Rules of Civil Procedure*, 80 A.L.R. Fed. 168

(1986). The rationale for disallowing this cost is that it is more appropriately categorized as a

component of attorney's fees rather than as a cost of suit.  As explained in Cleary v. Philip

Morris Inc., No. 09 C 1596, 2010 WL 4039793, at *2 (N.D. Ill. Oct. 14, 2010) (quoting

Haroco, Inc. v. Am. Nat. Bank & Trust Co. , 38 F.3d 1429, 1441 (7th Cir. 2008)):

---

[7]      Plaintiffs observe that Defendants have not shown which visual aids were
admitted into evidence, as required under L. Civ. R. 54.1(g) (10). Pls.' Br. at 15. Consistent
with Plaintiffs' argument, the Court noted that the demonstratives cited in its opinion on final
judgment  [Dkt. Entry 301] did not constitute evidence.  [Dkt. Entry 301 at 3, n.1].  However,
the Clerk denies taxation on the alternative basis discussed above.

Conceptually, the conduct of computerized legal research (as opposed to manual research) ordinarily corresponds to a reduction in the amount of attorney time needed to do the research. Haroco, 38 F.3d at 1441. Therefore, there is "no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does research on a computer and bills for both the time and the computer fee." Id. In both situations, the costs amount to attorney's fees, and they are not recoverable as costs under section 1920. Id.; see also, McIlveen v. Stone Container Corp., 910 F.2d 1581, 1584 (7th Cir. 1990).

This Court has denied the cost of computerized legal research numerous times, as Plaintiffs point out. Boyadjian, 994 F. Supp. at 281-82; Merck Sharp & Dohme Pharms., SRL, 2010 WL1381413, at * 6; Reichhold, Inc., 2009 WL 3761828, at *3; In re Jacoby Airplane Crash Litig., 2008 U.S. Dist. LEXIS 118037, at *24; Hurley, 1996 WL 549298, at *3.

The Clerk is not swayed by the case law presented by Defendants. This Court allowed the cost of computerized legal research in the case of Ricoh Corp. v. Pitney Bowes Inc., Civ. A. No. 02-5639, 2007 WL 1852553, at *4 (D.N.J. June 26, 2007), but the Court there relied upon United States v. Scheingold, 293 F. Supp. 2d 447, 453 (D.N.J. 2003), which applied the fee-shifting provision of the Internal Revenue Code, 26 U.S.C. §7430(c) (1)(A), not 28 U.S.C. § 1920. Similarly inapposite is the case of In re Cendant Corp., Deriv. Action Litig., because it addressed the reimbursement of counsel's expense for a class action and failed to cite or perform any analysis whatsoever of Rule 54(d)(1) or 28 U.S.C. § 1920. 232 F. Supp. 2d 327 (D.N.J. 2002). The same holds true for the other case upon which Defendants rely, In re Safety Components, Inc. Secs. Litig., 166 F. Supp. 2d 72, 108 (D.N.J. 2001).

Rather, the Clerk adopts the weight of authority holding that the costs of electronic legal research are not recoverable under § 1920. As the Taniguchi court reaffirmed, it is not within the power of the Clerk to evade the limited categories set forth by Congress in § 1920. Based upon the foregoing, the Clerk denies taxation of Defendants' legal research costs.

33

### VI.    Costs of Courier and Federal Express

In the same vein, Warner Chilcott contests the $11,458.60 cost of FedEx and courier charges which Mylan attempts to recoup, attacking both the legal basis of taxation and the sufficiency of Mylan's supporting documentation.

Plaintiffs correctly point out that, like the cost of computer-assisted legal research, there is no provision in § 1920 for this type of cost.  Additionally, Defendants' sole support, citation to the In re Cendant Corp. case, is flawed for the reasons just stated.  Moreover, as the Clerk earlier pointed out in Section II.B. above, this Court has held that the costs of delivery and messenger services are not taxable.  For all these reasons, the Clerk denies this requested cost.

### VII.    Summary

In sum, the Clerk taxes the following costs in favor of Defendants and against Plaintiffs:

| | |
|---|---|
| Fees for transcripts, § 1920 (2): | $34,248.30 |
| Fees for witnesses, § 1920 (3): | $ 2,346.60 |
| Fees for exemplification and copies, § 1920 (4): | $23,221.45 |
| **TOTAL:** | **$59,816.35** |

For the reasons set forth above, the motion of Defendants Mylan Pharmaceuticals Inc. and Mylan Inc. to tax costs against Plaintiffs Warner Chilcott Company, LLC, Warner Chilcott (US), LLC, and Mayne Pharma International Pty. Ltd. is hereby **GRANTED IN PART AND DENIED IN PART.**  An appropriate order follows.

WILLIAM T. WALSH

By: S/John T. O'Brien
          Deputy Clerk

April 18, 2013

34