UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

WARNER CHILCOTT LABORATORIES
IRELAND LIMITED, *et al.,*

                    :

                    :     CIVIL ACTION NO. 08-6304 (WJM)

          Plaintiffs,

                    :     **CLERK'S OPINION GRANTING IN**
     v.                   **PART AND DENYING IN PART**
                    :     **IMPAX'S MOTION TO TAX COSTS**

IMPAX LABORATORIES, INC., *et al.,*

                    :

          Defendants.
_____ :

WARNER CHILCOTT LABORATORIES    :
IRELAND LIMITED, *et al.,*

                    :     CIVIL ACTION NO. 09-2073 (WJM)

          Plaintiffs,

                    :

     v.

                    :

MYLAN PHARMACEUTICALS INC., *et al.*

                    :

          Defendants.
_____ :

WARNER CHILCOTT LABORATORIES    :
IRELAND LIMITED, *et al.,*

                    :     CIVIL ACTION NO. 09-1233 (WJM)

          Plaintiffs,

                    :

     v.

                    :

IMPAX LABORATORIES, INC.

                    :

          Defendant.
_____ :

        This matter comes before the Clerk on the motion of Defendant Impax Laboratories,

Inc. ("Impax," "Defendant") for the taxation of costs pursuant to Federal Rule of Civil Procedure

54(d) and Local Civil Rule 54.1.  Plaintiffs Warner Chilcott Company, LLC, Warner Chilcott

(US), LLC, and Mayne Pharma International Pty. Ltd. (collectively, "Warner Chilcott," "Plaintiffs") oppose this motion.

Impax was named as a defendant in two of these three consolidated actions, Civ. A. Nos. 08-6304 and 09-1233, by Warner Chilcott for alleged infringement of its United States Patent No. 6,958,161 ("the '161 patent"). The '161 patent relates to Plaintiffs' modified release preparations of doxycycline hyclate, marketed as "Doryx." In numerous complaints filed by Warner Chilcott, it alleged that Impax and other defendants, including Mylan Pharmaceuticals Inc. and Mylan Inc. (collectively, "Mylan"), infringed its '161 patent by filing Abbreviated New Drug Applications with the United States Food and Drug Administration for generic delayed-release tablets containing a doxycycline hyclate base before the expiration of the '161 patent.

The claims against the various defendants were dismissed except for those against Impax and Mylan in these three consolidated actions, which proceeded to trial. A seven-day bench trial was held on February 1-9, 2012, and on April 30, 2012, the Court entered Final Judgment in favor of Warner Chilcott on the issue of validity and in favor of Impax and Mylan on the issue of infringement. [Dkt. Entry 302].[1]

All parties appealed this Court's judgment to the United States Court of Appeals for the Federal Circuit [Dkt. Entries 303, 316, 318] and on September 7, 2012, that judgment was affirmed. [Dkt. Entry 339].

While the appeals were pending, Mylan filed a motion to tax costs on May 29, 2012 [Dkt. Entry 317] and Impax's motion, under consideration here, followed on May 30, 2012 [Dkt. Entry 319]. The Clerk has issued a separate opinion [Dkt. Entry 374] and order

---

[1]    References herein are to docket entries in Civ. A. No.08-6304.

[Dkt. Entry 375] addressing Mylan's motion and setting forth the factual and procedural histories in greater detail.  Many of the costs sought here by Impax are of the same type as those requested by Mylan.  Accordingly, the Clerk incorporates herein the opinion on Mylan's motion, which also sets forth the relevant law.

Impax requests the taxation of costs pursuant to Fed. R. Civ. P. 54(d) (1), which provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees – should be allowed to the prevailing party."  As set forth in its bill of costs [Dkt. Entry 319-2], Impax seeks the fees of: *pro hac vice* admission ($1,500.00); transcripts of hearings and depositions ($63,043.28); witnesses ($14,028.56); exemplification and copies ($135,036.21); postage and messenger services ($2,190.96); and computer-assisted legal research ($7,506.40); for a total of $223,305.41.[2]  Plaintiffs contest all categories of costs except the fees of pro hac vice and the transcripts of hearings.[3]

Impax is the "prevailing party" in this patent litigation in which it was exonerated from Warner Chilcott's claims of infringement. The judicial determination of non-infringement materially altered the legal relationship between the parties in a way that benefits Impax. Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1181-82 (Fed. Cir. 1996); United Access Technologies, LLC v. Earthlink, Inc., Civil Action No. 02-272-MPT, 2012 WL 2175786, at *4 (D. Del. June 14, 2012).

[2]     Impax also originally requested the $1,595.00 cost of the translation of a Japanese document, but withdrew that request upon the United States Supreme Court's ruling in Taniguchi v. Kan Pacific Saipan, Ltd., 132 S.Ct. 1997 (2012) that the "compensation of interpreters" in §1920 (6) is limited to the cost of oral translation, to the exclusion of the cost of document translation.  Def.'s Reply at 8.  This deduction accounts for the discrepancy between the current, revised total of $223,305.41 and the total of $224,900.41 indicated on its bill of cost.

[3]     As in the Mylan motion, Plaintiffs' additional argument that this motion should be stayed pending the Federal Circuit's decision on appeal is moot.

While there is a strong presumption within the Third Circuit in favor of granting a prevailing party's costs, <u>Reger v. Nemours Found., Inc.</u>, 599 F.3d 285, 288 (3d Cir. 2010), reimbursable costs are limited to those set forth in 28 U.S.C. § 1920, <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 441 (1987), and that party must provide sufficient information to show that the costs sought fall within the purview of § 1920, <u>Romero v. CSX Transp., Inc.</u> 270 F.R.D. 199, 201-202 (D.N.J. 2010).

Items taxable as costs, pursuant to § 1920, are:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

In addition to Fed. R. Civ. P. 54(d) (1) and 28 U.S.C. § 1920, the Clerk is guided by Local Civil Rule 54.1, which "establishes the general procedures to be followed in those cases where a party is entitled to recover costs" under § 1920.  Lite, <u>N.J. Federal Practice Rules</u>, Comment 2 to Rule 54.1 (Gann 2013 ed.) at 234.

Impax has complied with the procedural requirements of L. Civ. R. 54.1 and 28 U.S.C. § 1924 by timely filing and serving a verified Bill of Costs with copies of invoices attached [Dkt. Entries 317, 331].  The Clerk therefore turns to the specific costs of which Impax seeks taxation, as set forth in the Affidavit of Adrienne G. Johnson, Esq. ("Johnson Aff.") [Dkt. Entry 319-3].

### I.      *Pro Hac Vice* **Fees, § 1920 (1)**

Impax seeks reimbursement of the $1,500.00 of fees paid to the Clerk for ten *pro hac vice*

applications.  Defendant asserts that such fees are taxable as fees of the Clerk, pursuant to

§ 1920 (1), and cites the case of Church & Dwight Co., Inc. v. Abbott Labs., Civ. A. No. 05-

2142, 2009 U.S. Dist. LEXIS 58067, at *20-21 (D.N.J. July 8, 2009).  Def.'s Br. at 2.

Section 1920 (1) allows the taxation of the "[f]ees of the clerk" but does not explicitly

include *pro hac vice* fees as costs.  The Third Circuit has not addressed whether these fees

are taxable costs and other federal circuits are divided on this issue.  The Eighth Circuit has held

that *pro hac vice* fees are recoverable under § 1920 (1), Craftsmen Limousine, Inc. v. Ford Motor

Co., 579 F.3d 894, 898 (8th Cir. 2009), and the Eleventh Circuit has ruled to the contrary,

Beck v. Prupis, 162 F.3d 1090, 1100 (11th Cir. 1998), aff'd on other grounds, 529 U.S. 494

(2000) (finding district court did not abuse its discretion in disallowing the taxation of *pro*

*hac vice* fees).

Defendant relies upon the case of Church & Dwight Co., Inc., in which this Court

summarily taxed *pro hac vice* fees without discussion of case law or its rationale. 2009 U.S.

Dist. LEXIS 58067, at *20-21.  Nevertheless, particularly in light of the Supreme Court's

recent reminder in Taniguchi to apply § 1920 restrictively, 132 S. Ct. 1997 (2012), the Clerk

adopts the reasoning of those courts within this Circuit which have declined to extend § 1920 (1)

to cover such fees.  In Sheffer v. Experian Info. Solutions, Inc., 290 F.Supp.2d 538, 552

(E.D. Pa. 2003) (quoting Romero v. United States, 865 F. Supp. 585, 594 (E.D. Mo. 1994)),

the court explained that *pro hac vice* fees are "an 'expense of counsel for the privilege of

practicing law in this Court' and, as such, are 'not normally charged to a fee-paying client . . .

and are not recoverable' under § 1920." See also Montgomery County v. Microvote Corp., Civ. A. No. 97-6331, 2004 WL 1087196 , at *3 (E.D. Pa. May 13, 2004).  Other courts have similarly held. See, e.g., Moss v. Spartanburg County School Dist., C.A. No. 7:09-1586-HMH, 2011 WL 1870280, at *1 (D.S.C. May 17, 2011); Lofton v. McNeil Consumer & Specialty Pharm., Civ. A. No. 3:05-CV-1531-L, 2011 WL 206165, at *1 (N.D. Tex. Jan 4, 2011), report and recommendation adopted, 2011 WL 208391 (N.D. Tex. Jan. 21, 2011); Knauff v. Dorel Juvenile Group, Inc., Civ. A. No. SA-08-CV-336-XR, 2010 WL 2545424, at *2 (W.D. Tex. June 21, 2010).

The Clerk determines that Warner Chilcott should not be required to pay these fees simply because Impax chose to be represented by counsel who are not admitted to practice in this district. Therefore, the Clerk denies the taxation of Impax's *pro hac vice* fees.

## II.   Fees for Transcripts, § 1920 (2)

### A.  Hearing and Trial Transcripts

Impax wishes to recover the costs of the transcripts of several hearings ($829.55) and of the trial transcripts ($4,806.90), or a total of $5,636.45.  Fees for recorded transcripts are taxable under § 1920 (2) if the transcripts were necessarily obtained for use in the case.

Defendant explains the necessity of these transcripts as follow:

The trial transcript was necessary to completing the post-trial brief and findings of fact as required by this Court.  The *Markman* hearing transcript was required to understand the Court's claim construction – and notably, questions of claim construction persisted all the way into trial.  Impax also seeks the costs for a number of pre-trial conferences and case management conferences, all of which were necessary for understanding and complying with the court's requirements moving forward in trial.  Finally, Impax seeks costs for two hearings on motions to strike, the final rules and arguments of which were necessary for Impax to craft its final case presentation for trial.

Def.'s Br. at 3.

6

As with the Mylan motion, Plaintiffs here do not contest taxation of this cost. Furthermore, the Clerk is satisfied with Impax's explanation of the necessity of these transcripts in this complex case.  The bulk of this cost arises out of the trial transcripts, and, as noted in the Clerk's opinion in the companion Mylan motion, trial transcripts are taxable when necessary to prepare findings of fact and conclusions of law which include annotations to the trial transcripts, as required by the Final Pre-Trial Order in this case.  [Dkt. Entry 252-2 at 294]. Accordingly, the Clerk taxes this entire **$5,636.45** cost.

### B.  Deposition Transcripts

Impax also requests the $57,406.83 cost of the written transcripts of 21 depositions and the videotaped version of some of those depositions, pursuant to § 1920 (2).  Warner Chilcott objects to all costs of eight of the depositions, totaling $12,630.30 and asserts that overall, the transcript costs are over-inclusive as to services and should be reduced by an additional sum of $32,693.61.

Defendant justifies these costs by explaining that all of the transcripts of the following deponents were used during or in preparation for hearings or trial:  Drs. Sodhi, Sommer and Kibbe were Impax expert witnesses; Drs. Davies and McGinity were Plaintiffs' expert witnesses; Messrs. Lepore, Lukas, Quinn and Hayes were named inventors of the patent in suit; and Messrs. Ting, Thomas, Shaw and Liu were Impax fact witnesses deposed by Plaintiffs.  Def.'s Br. at 4. Defendant has omitted a final deponent, Tina DeVries from this list, but the Clerk has ascertained that she was listed in the Final Pre-Trial Order as a potential adverse witness for Impax.  [Dkt. Entry 252-2 at 272].

Plaintiffs object to all costs of the deposition transcripts of Kenneth Liu and Mark Shaw, two depositions of James McGinity, and the October 27, 2011 deposition of Dr. Martyn Davies,

7

asserting, "[n]one of the depositions of these witnesses were used at trial for impeachment purposes, and they were not entered into evidence, or even designated for trial. Impax did not attempt to explain how the depositions of these witnesses were used during the litigation, and thus has not shown how costs associated with these depositions are taxable." Pls.' Br. at 6-7.

Mylan too had objected to the same costs of the McGinity depositions of April 15, 2010 and November 11, 2011, as well as the Davies deposition of October 27, 2011. As stated in the Clerk's opinion on the Mylan motion [Dkt. Entry 374 at 9], these transcripts were necessarily obtained for use in the case because the Final Pre-Trial Order lists James McGinity as an expert witness for Plaintiffs and the contested Davies deposition was also included therein. Therefore, these depositions of expert witnesses would have "appear[ed] reasonably necessary to the parties in light of a particular situation existing at the times they were taken.'" Thabault v. Chait, Civ. A. No. 85-2441, 2009 WL 69332, at *7 (D.N.J. Jan. 7, 2009). Expressed differently by this Court in another patent infringement suit, Pharm. Resources, Inc. v. Roxane Labs., Inc., "[i]t is reasonable to conclude that the depositions of the expert witnesses were necessarily obtained for use in the case because issues such as infringement, obviousness, anticipation, and indefiniteness would likely be resolved on the basis of their testimony, which would have to be studied and analyzed." Civ. A. No. 03-3357, 2008 WL 2951173, at *3 (D.N.J. July 25, 2008).

Regarding Mark Shaw and Kenneth Liu, Defendant states that like Messrs. Ting and Thomas, they were Impax fact witnesses deposed by Plaintiffs and that "Messrs. Shaw and Liu's testimony was necessary for Impax to acquire because of the likelihood that Plaintiffs would similarly designate their testimony" for use at trial. Pls.' Br. at 4. Mark Shaw is shown in the

Final Pre-Trial Order as a fact witness of Impax [Dkt. Entry 252-2 at 271]. The Clerk cannot find that these transcripts were obtained by Defendant merely for investigatory purposes but rather, agrees with Impax that they would have been necessary for defense counsel to prepare for trial. In sum, all eight contested depositions will be taxed. However, their taxation will be subject to the deductions discussed below.

As to the remaining depositions, Warner Chilcott maintains that the only fees taxable under § 1920 (2) and L. Civ. R. 54.1(g) (7) are the costs of the preparation of the transcript and the reporter. Pls.' Br. at 8-12. Other costs of videotapes, DVD Sync, shipping/delivery, expedited transcripts, and litigation support services such as condensed transcript, Realtime and rough ASCII, are, in their view, for the convenience of counsel and accordingly, non-taxable. Id. Excluded from this list of objectionable costs is the cost of exhibits charged in the deposition invoices.

On the issue of videotapes, Defendant responds to Plaintiffs' convenience argument by stating that "[a]t the time the depositions were taken, the parties had not come to any agreement regarding the manner in which depositions would be presented to the Court" and therefore, Impax believed it was reasonably necessary to acquire the video depositions. Impax further notes that Plaintiffs noticed several of the depositions to be videotaped and Impax wanted access to all evidence available to Warner Chilcott. [Dkt. Entry 332]; Def.'s Reply Br. at 5.

The Clerk agrees with Plaintiffs that the videotapes were not necessarily obtained for use in the case. The written transcripts of these depositions were necessary, but Defendant offers no cogent reason for having this same testimony in the alternative, videotaped format. In the case of Nobel Biocare USA, LLC v. Technique D'Usinage Sinlab, Inc., the prevailing party linked the need of the videotapes to the uncertainty of which witnesses would be available for trial, an

9

argument not even proffered here.  No. 1:12cv730, 2013 WL 819911 (E.D. Va. Mar. 4, 2013).
The court denied the cost of the videotapes, stating, "the concept of necessity for use in the case
connotes something more than convenience or duplication to ensure alternative methods for
presenting material at trial."  Id. at *3.

  As indicated in the Clerk's Mylan opinion, Defendant bears the burden of showing that
the transcripts and videotapes were independently necessary.  Necessity does arise out of
counsel's desire to be on an equal footing with his or her adversary and speculation regarding
a potential future need should not be equated with necessity.  Defendant could have ordered
the videotapes noticed by Plaintiffs if and when their necessity became evident.

  Nor does necessity turn on how the deposition was noticed.  Even in cases where the
court deemed it appropriate to award the cost of conducting the deposition in the manner noticed,
it still required that the prevailing party explain why it was necessary to obtain both regular
transcripts and videotaped copies.  Morrison v. Reichhold Chemicals, Inc., 97 F.3d 460, 463-65
(11th Cir. 1996) (analyzing the taxability of videotaped depositions prior to the amendment of
§ 1920 (2) in 2008); Woods v. DeAngelo Marine Exhaust, Inc., No. 08-81579-Civ., 2010 WL
4116571, at *4-5 (S.D. Fl. Sept. 27, 2010), report and recommendation adopted, 2010 WL
4102939 (S.D. Fl. Oct. 18, 2010).  See also Tilton v. Capital Cities/ABC, Inc., 115 F.3d 1471,
1478 (10th Cir. 1997) (explaining, "[w]e respectfully disagree with Morrison to the extent that
the recording method contained in the deposition notice controls whether a court may tax the
costs associated with the recording method," and concluding that "the appropriate inquiry is
[instead] whether the recording method has been 'necessarily obtained for use in the case' as
mandated by section 1920(2).")

  Impax has failed its burden of demonstrating the independent necessity of the videotapes.
Therefore, based upon the foregoing, the Clerk denies all videotaping costs.

The Clerk also agrees with Plaintiffs that deductions must be made for expedited and litigation support services, which were fees incurred for the convenience of counsel, outside of the ambit of § 1920.  Consistent with the case law set forth in the Clerk's *Mylan* opinion, only the costs of the non-expedited copies of transcripts and the reporter appearance are taxable. Accordingly, expedited transcripts charged at the rate of $8.50 and $9.50 per page will be taxed at the rate of $5.25 per page for the "Original + 1 . . . Certified Deposition."  [Dkt. Entry 332-1]; Reply Declaration of Adrienne G. Johnson, Esq. ("Johnson Reply Decl.") at ¶ 4.[4]  The non-expedited transcripts will be taxed at the rates charged in the supporting invoices.  Additionally, the Clerk taxes the costs of exhibits, to which Plaintiffs have not objected.

In light of the above, the Clerk taxes the following transcript costs, in the order in which they appear in Exhibit C to the Johnson Aff. [Dkt. Entry 319-6][5]:

| **Deponent** | **Taxed Amount** |
|---|---|
| **Martyn Davies, 7/8/11** | |
| Orig. + 1 Cert'd Deposition, 258 pp. @ $5.25/p. | $ 1,354.50 |
| Reporter's Appearance | $    150.00 |
| | |
| **Martyn Davies, 10/26/11** | |
| 1 Certified Deposition | $ 1,123.50 |
| Exhibits | $    685.00 |
| | |
| **Martyn Davies, 10/27/11** | |
| 1 Certified Deposition | $ 1,316.00 |
| Exhibits | $    257.00 |

_____

[4]      By contrast, expedited transcripts were taxed at the rate of $3.50 per page in the *Mylan* motion because such transcripts were copies, not originals, which are charged at the higher rate of $5.25 per page.

[5]      The fees of the Kibbe depositions of 12/4/11 and 12/5/11, as well as the Sodhi and Sommer depositions are set forth in Exhibit A of the Johnson Reply Decl., [Dkt. Entry 332-1].

11

| **Deponent** | **Taxed Amount** |
|---|---|
| **Martyn Davies, 10/28/11** | |
| Reporter's Appearance | $ 150.00 |
| Orig. + 1 Cert'd Deposition, 325 pp. @ $5.25/p. | $ 1,706.25 |
| Exhibits | $ 369.00 |
| | |
| **Angelo Lepore, 10/21/10** | |
| Orig. + 1 Cert'd Deposition | $ 735.00 |
| Reporter's Appearance | $ 150.00 |
| | |
| **Stephan Lukas, 10/28/10** | |
| Orig. + 1 Cert'd Deposition, 211 pp. @ $5.25/p. | $ 1,107.75 |
| Reporter's Appearance | $ 150.00 |
| | |
| **David Hayes 30(b)(6), 11/18/10** | |
| Orig. + 1 Cert'd Deposition | $ 1,286.25 |
| Reporter's Appearance | $ 225.00 |
| | |
| **David Hayes 30(b)(1), 11/19/10** | |
| Orig. + 1 Cert'd Deposition | $ 446.25 |
| Reporter's Appearance | $ 75.00 |
| | |
| **Tina DeVries, 1/21/11** | |
| Orig. + 1 Cert'd Deposition | $ 666.75 |
| Reporter's Appearance | $ 150.00 |
| | |
| **Eugene Quinn 30(b)(1),(6), 1/27/11** | |
| Orig. + 1 Cert'd Deposition, 30(b)(6) | $ 267.75 |
| Orig. + 1 Cert'd Deposition, 30(b)(1) | $ 488.25 |
| Reporter's Appearance | $ 150.00 |
| | |
| **Arthur Kibbe, 4/22/10** | |
| Certified Transcript | $ 776.75 |
| Exhibits | $ 73.40 |
| | |
| **Arthur Kibbe, 12/4/11** | |
| 1 Copy of Transcript | $ 1,482.25 |
| | |
| **Arthur Kibbe, 12/5/11** | |
| 1 Copy of Transcript | $ 1,232.00 |
| | |
| **Kenneth Liu, 11/9/10** | |
| Certified Transcript | $ 919.75 |
| Exhibits | $ 309.90 |

| Deponent | Taxed Amount |
|---|---|
| **James W. McGinity, 4/15/10** | |
| Reporter's Appearance | $    150.00 |
| Orig. + 1 Cert'd Deposition | $    971.25 |
| Exhibits | $    147.00 |
| | |
| **James W. McGinity, 11/11/11** | |
| Reporter's Appearance | $    150.00 |
| Orig. + 1 Cert'd Deposition, 293 pp. @ $5.25/p. | $ 1,538.25 |
| Exhibits | $    295.00 |
| | |
| **Mark Shaw, 2/2/11** | |
| Certified Transcript | $    208.00 |
| Exhibits | $    146.40 |
| | |
| **Rana S.N. Sodhi, 11/15/11** | |
| 1 Copy of Transcript | $ 1,089.55 |
| | |
| **Andre J. Sommer, 11/9/11** | |
| 1 Copy of Transcript | $ 1,474.55 |
| | |
| **Christian Thomas, 11/11/10** | |
| Certified Transcript | $    321.75 |
| Exhibits | $      41.10 |
| | |
| **Richard Ting, 2/4/11** | |
| Certified Transcript | $    884.00 |
| Exhibits | $      48.60 |
| | |
| **Total:** | **$25,268.75** |

Combining the allowed costs of $5,636.45 for hearing and trial transcripts and $25,268.75 for deposition transcripts (consisting of a reduction of $32,138.08), the Clerk taxes a total of **$30,905.20** pursuant to § 1920 (2).

## III.    Fees for Witnesses, § 1920 (3)

Impax seeks the taxation of witness fees in the amount of $14,028.56 pursuant to § 1920 (3).   This requested total incorporates fees for the trial attendance of Arthur Kibbe,

Rana Sodhi, and Andre Sommer, as well as fees for the attendance at depositions of these same witnesses and Kenneth Liu, Mark Shaw, Thomas Christian and Richard Ting.  [Dkt. Entry 320]; Johnson Aff.., Exs. D-1, D-2.   The fees include statutory attendance fees of $40 per day and expenses for travel, accommodations and meals.

Warner Chilcott objects on the ground that Impax requests fees for days when the witnesses were not in "actual and proper attendance," as required under L. Civ. R. 54.1(g) (1). With the exception of Arthur Kibbe, all witnesses testified at the trial or deposition for one day only and yet, Impax requests fees associated with multiple days of attendance.  In Plaintiffs' view, these additional fees were incurred merely for the convenience of Impax and its counsel. Pls.' Br. at 12-14.

As stated in the Clerk's Mylan opinion, witness fees are governed by L. Civ. R. 54.1(g) (1) and 28 U.S.C.§ 1821, which provides for an attendance fee of $40 per day and subsistence allowances at per diem rates established by the Administrator of General Services ("GSA").  Subject to limitations of economy and distance necessarily traveled, § 1821(c) also provides for the actual expenses of travel by common carrier and a mileage allowance, as prescribed by the GSA,  for travel by privately owned vehicles.

### A.  Trial Witnesses

Regarding the witness fees for trial attendance, the Clerk agrees with Plaintiffs that Defendant seeks fees for days on which the witnesses' attendance was not necessary, as required under § 1821.  Hurtado v. United States, 410 U.S. 578, 583-87 (1973).  While Rana Sodhi and Andre Sommer testified on only one day of trial, [Dkt. Entries 268, 270] Impax seeks seven days' and six days' worth of fees, respectively.  For Arthur Kibbe, who testified on two days of

14

the trial, [Dkt. Entries 270, 271], Impax requests nine days' worth of fees.  Additionally,

Defendant has failed to offer a cogent explanation in response to Plaintiffs' objection regarding

Dr. Sodhi's unnecessary first trip to Newark from January 29 to February 2, 2012.  Pls.' Br.

at 12, n.2.

Based upon the case law explored more fully in the Mylan opinion, the Clerk determines

that trial attendance of these witnesses was necessary only on the days on which they testified.

However, in addition to the necessary attendance at trial, § 1821(b) grants an attendance fee for

the days spent traveling to and from the courthouse.  The three witnesses arrived in Newark

from some distance.  Drs. Sodhi and Sommer traveled from Toronto and Ohio, respectively,

via a short flight, and Dr. Kibbe drove 115 miles from Wilkes-Barre, PA.  Court adjourned by

4:30 P.M. on the days of their trial testimony on 2/7-2/9/12 [Dkt. Entries 268, 270, 271],

so these witnesses could reasonably have returned home on the last day of their testimony

and the record reflects that Dr. Sodhi did so.  However, to allow for travel on the day before their

trial testimony, the Clerk taxes one day of attendance and subsistence fees in addition to the

number of days of trial testimony for Drs. Sodhi, Sommer and Kibbe.  Also, as requested by

Warner Chilcott, the Clerk deducts the $1,197.70 cost of Dr. Sodhi's first trip from the three

witnesses' total travel costs of $4,754.56.

The GSA per diem rates in Newark were, at trial time in February 2012:  $120 for

lodging; $61 for meals and incidental expenses, except for the first and last day of travel, for

which the meal allowance was $45.75; and $.51 per mile traveled by privately owned vehicle.

In sum, the following trial witness fees, totaling **$4,652.36**,  are taxed:

| Witness | Attendance Fees | Travel Fees | Lodging | Meals | Total |
|---|---|---|---|---|---|
| Arthur Kibbe | $40 x 3 days = $120.00 | $180.00 + $42.00 = $222.00 | $120 x 2 nights = $240.00 | $61 x 1 day + $45.75 x 2 days = $152.50 | $ 734.50 |
| Rana Sodhi | $40 x 2 days = $80.00 | $1,326.96 | $120.00 x 1 night = $120.00 | $45.75 x 2 days = $91.50 | $1,618.46 |
| Andre Sommer | $40 x 2 days = $80.00 | $2,007.90 | $120 x 1 night = $120.00 | $45.75 x 2 days = $91.50 | $2,299.40 |
| | | | | | **$4,652.36** |

**B.  Deposition Witnesses**

Impax likewise requests reimbursement of the fees of deposition witnesses.  Under L. Civ. R. 54.1(g) (7), "[f]ees for the witness at the taking of a deposition are taxable at the same rate as for attendance at trial," pursuant to L. Civ. R. 54.1(g) (1).

Warner Chilcott again disputes the excessive number of days claimed for three witnesses. However, Plaintiffs do not oppose the associated travel costs, totaling **$2,391.33**, which the Clerk taxes.  Nor does Warner Chilcott contest the $40 statutory witness fee claimed for each of Kenneth Liu, Mark Shaw, Christian Thomas and Richard Ting.  The Clerk also taxes this **$160.00** amount.

The remaining fees consist of subsistence and the statutory witness fees for the depositions of Arthur Kibbe on 4/22/10, 11/22/11 (cancelled), and 12/4 - 12/5/11, as well as the Sodhi deposition of 11/15/11 and the Sommer deposition of 11/9/11.  The Kibbe deposition of 4/22/10 occurred in New York City and the parties agree that the two days dedicated to this

deposition, including travel, merit one night's stay at the GSA rate of $318 and two days of meals at the then-applicable GSA travel day rate of $53.25 per day.  The Clerk also awards two days of the statutory fee, or an additional $80.  Fees awarded for this deposition total **$504.50**.

The cancelled Kibbe deposition of 11/22/11, scheduled to occur in Washington, D.C., required one night's stay at the GSA rate of $183 per night, not the three requested by Impax. Two days of meals at the travel day rate of $53.25 were also necessary as well as two days of the $40 statutory witness fee.  These taxable fees total **$369.50**.[6]

The final Kibbe deposition of 12/4 – 12/5/11 in Washington D.C. entailed a 250-mile, approximately four-hour drive for the witness and consisted of two full days of depositions, or eight hours per day.  Therefore, the Clerk allows four days of attendance, including travel days on either end for the witness' round-trip from Wilkes-Barre to Washington.  Allowed fees are: three nights of lodging at the $183 rate ($549), two days of meals at the $71 rate and two at the $53.25 travel day rate ($248.50 combined) and four days of the $40 statutory witness fee ($160).  These total **$957.50**.

For the 11/15/11 deposition in Washington, D.C. of Dr. Sodhi, the record reflects that he returned to Toronto on the evening of his deposition.  Therefore, the Clerk allows one day for travel on the preceding day in addition to the day of his deposition or two days of attendance and subsistence:  $80 in statutory attendance fees, $183 for lodging, and $106.50 (2 x $53.25) for meals, totaling **$369.50**.

---

[6]        Arthur Kibbe was a claim construction expert for Impax, Mylan and the Actavis Defendants.  Impax alludes to a 2/3 breakdown between defendants.  The Clerk will not get embroiled in a possible cost-sharing agreement.  The Clerk's non-apportioned award of these fees, not requested by any party other than Impax, will not result in a duplicate award.  The Clerk leaves it to the defendants to sort out this reimbursement amongst themselves.

17

The last deposition for which Impax seeks fees is that of Andre Sommer on 11/9/11 in Washington, D.C.  This involved a short flight from Dayton, OH.  The Clerk taxes the same fees for this one-day deposition as for the Sodhi deposition or a total of **$369.50**.

Fees for deposition witnesses are taxed at **$5,121.83** ($2,391.33 + $160.00 + $504.50 + $369.50 + $957.50 + $369.50 + $369.50).  Combining this amount with the taxed trial witness fees of $4,652.36, the Clerk taxes a total of **$9,774.19** in witness fees pursuant to § 1920 (3).

**IV.    Costs of Exemplification and Making Copies, § 1920 (4)**

**A.  Costs of Making Copies**

Impax requests taxation of the costs of making paper copies ($37,238.19) and the costs of electronic documents ($7,937.82), or a total of $45,176.01.

**1.  Paper Copies**

With regard to the paper copies, Impax states that it "seeks to recover only limited paper copying costs.  Impax seeks only those costs directly related to trial, which were necessarily incurred in the course of litigation. . . As such, Impax has limited the paper copying costs it seeks to those directly before and during the trial and post-trial briefing period."  Def.'s Br. at 5.

However, Defendant's explanatory table which describes the fees of each supporting invoice [Dkt. Entry 321, Ex. E] draws a distinction between "Copies and binding in preparation of trial," and copies "provided to Court and opposing counsel."  This dichotomy leads the Clerk to infer that those copies made "in preparation of trial" were made for the convenience of defense counsel as opposed to being submitted to the Court and opposing counsel.  As indicated in the Clerk's Mylan opinion, "[t]he cost of copies obtained for counsel's own use is not taxable."  L. Civ. R. 54.1(g) (9).

18

This is essentially Warner Chilcott's position.  Plaintiffs assert that only the costs of those copies which were provided to the Court and opposing counsel are taxable.  Additionally, deductions must be made for tabs, binders and sheet protectors which are non-taxable items falling under the category of attorney overhead.  Pls.' Br. at 15-17.

The Clerk determines that just those copies provided by Impax to the Court and opposing counsel were "necessarily obtained for use in the case," as required under § 1920 (4).  These documents consisted of copies of exhibits, witness binders, "specially printed color copies of accused product images" and "printing of admitted trial exhibits for post-trial briefing." [Dkt. Entry 321, Ex. E].  However, these fees, totaling $13,288.05, must be reduced by the non-taxable cost of custom tabs, binders and sheet protectors, amounting to $2,010.72.  Plaintiffs' chart clearly and accurately shows this breakdown.  Pls.' Br. at 17-18. Based upon the foregoing, the Clerk taxes paper copies in the amount of **$11,277.33**.

### 2.  Electronic Copies

As for the $7,937.82 cost of electronic copies, "Impax seeks the cost of file conversion, Bates labeling, and storing copies of electronic documents produced during litigation."  Def.'s Br. at 5.

In support, Impax cites the case of <u>Race Tires Am., Inc. v. Hoosier Racing Tire Corp.</u>, 674 F.3d 158 (3d Cir.), <u>cert.denied</u>, 133 S. Ct. 233 (2012).  However, Defendant misapplies the Third Circuit's ruling, which is discussed at quite some length in the Clerk's Mylan opinion.  To sum up, the Circuit Court there held that "only the scanning of hard copy documents, the conversion of native files to TIFF, and the transfer of VHS tapes to DVD involved 'copying,' and that the costs attributable to only those activities are recoverable under § 1920(4)'s allowance for the 'costs of making copies of any materials.'"  <u>Id.</u> at 171.

Impax's supporting invoices contain charges predominantly for discovery data hosting

or storage, in addition to TIFF conversion, Bates labeling, OCR, creating original dvd's and an

original CD, making copies of original dvd's and an original CD, converting pages to pdf and

project tech time.  [Dkt. Entry 321, Ex. E].  In a very recent case, in which the court denied the

$267,540 cost of storing electronically stored information ("ESI"), in reliance upon Race Tires,

it stated, "[s]imply put, 'storing documents' and 'copying documents' are two different things:

the latter is compensable, and the former is not."   Hallmark Cards, Inc. v. Monitor Clipper

Partners, LLC, No. 08–0840–CV–W–ODS, 2013 WL 1155245, at *1 (W.D.Mo. Mar. 20, 2013).

Like the Race Tires court, which harkened back to the pre-digital era, the court reasoned,

"[i]f one were to analogize to a non-ESI situation, the statute would not allow a prevailing

party to recover for renting space to store copies."  Id. at n.3.

Similarly, in Abbott Point of Care, Inc. v. Epocal, Inc., the court described Race Tires as

"a thorough, reasonable, and persuasive interpretation" of § 1920, and denied the $340,498 cost

of maintaining an electronic discovery database, noting, "[s]ince . . . *Race Tires America . . .,*

almost all district courts considering the issue, . . . have held that the costs of creating and

maintaining an electronic discovery database are not recoverable under § 1920 except insofar

as the costs involve scanning documents or converting documents to an agreed-upon format,

such as tagged image file format ('TIFF')." Civ. A. No. CV-08-S-543-NE, 2012 WL 7810970,

at *2-4 (N.D.Ala. Nov. 5, 2012), citing cases.

Likewise, in Amana Society, Inc. v. Excel Eng'g, Inc., the court disallowed the costs

of uploading documents to a litigation-support software database, Bates match, OCR and

20

document utilization on the basis of the <u>Race Tires</u> decision.  No. 10-CV-168-LRR, 2013 WL

427394, at *5-7 (N.D.Iowa Feb. 4, 2013).  The court allowed only the isolated costs of

converting native documents to TIFF, scanning electronic documents and making copies of

documents on discs.

Based upon the binding <u>Race Tires</u> decision, as interpreted by the case law above,

the Clerk taxes only Impax's costs of TIFF conversion, described in the invoices as "Gigs

processed to tiff without metadata extraction," and the costs of making copies of original dvd's

and the original CD.  The total cost of TIFF conversion, as precisely set forth in Plaintiffs' chart,

Pls.' Br. at 19, is $1,820.70.  To this cost, the Clerk adds the cost of making copies of original

dvd's ($30 + $30) and original CD ($50).  The total taxable cost of electronic copies is

**$1,930.70**.

Pursuant to § 1920 (4), the Clerk taxes the total combined cost of paper ($11,277.33)

and electronic ($1,930.70) copies in the amount of **$13,208.03**.

### B.  Exemplification

Impax seeks to recoup the cost of demonstratives in the amount of $90,914.20.[7]

If taxable, the requested fees would fall under the category of "exemplification" in § 1920 (4).

This amount consists of:  $36,122.75 of professional fees for developing demonstratives and

---

[7]      Impax's table with the breakdown of these costs [Dkt. Entry 319-7, Ex. F] incorrectly shows a total of $89,860.20 instead of $90,914.20.  As Plaintiffs point out, this discrepancy of $1,054.00 is the amount of the first entry relating to the April 6 hearing, which the Clerk believes was inadvertently omitted from Impax's total.

illustrations; $53,762.50 of trial consultant fees; and the $1,028.95 expense of courtroom

trial equipment rental.

      **1.   Demonstratives**

      Impax's supporting invoices are for "professional fees" of individuals charged at varying

rates, between $175 and $350 per hour, for the time period of January 1, through February 10,

2012.   Entries on the invoices from two graphic design firms, Fulcrum Legal Graphics and

Resonant Legal Media, are for:  a timeline created for the April 6, 2011 case management

conference, billed at $1,054;  a conference call, billed at $175;  the development of

demonstratives and illustrations for trial, amounting to $22,968.75; and general "presentation

development," and development of demonstratives and illustrations, not "for trial," totaling

$11,925.  [Dkt. Entry 319-7, Ex. F].  Impax asserts that these fees should be taxed because, with

the exception of the timeline, they were all incurred the week before and during trial and relate to

demonstratives which assisted the Court in a complex case, making them "absolutely necessary."

Def.'s Br. at 6.  Furthermore, even though these demonstratives were not admitted into evidence,

as required under L. Civ. R. 54.1(g) (10), this Court's decision in Thabault v. Chait, Civ. A. No.

85-2441, 2009 WL 69332, at *7 (D.N.J. Jan. 7, 2009) supports taxation.  Def.'s Br. at 6; Def.'s

Reply at 6-7.

      Warner Chilcott maintains that all of these costs should be disallowed because the visual

aids were not admitted into evidence, their use at trial has not been identified by Defendant and

certain costs are not even linked to the trial.  Additionally, Plaintiffs distinguish this case from

Thabault, a bigger and more complex case, and assert that the Local Rules should be not relaxed in this case.  Pls.' Br. at 19-22.  Alternatively, Warner Chilcott contends that at most, only the $22,968.75 cost of developing demonstratives and illustrations for trial should be taxed.  Id. at 21-22.

In the Mylan opinion, the Clerk analyzed case law addressing the definition of "exemplification" within the meaning of § 1920 (4).  Unfortunately, there is no binding Third Circuit precedent to clarify this issue.  Instead, the Clerk must take cues from the United States Supreme Court's reminder in Taniguchi, 132 S. Ct. at 2006, that "[t]axable costs are limited to relatively minor, incidental expenses" and are "modest in scope."  For that reason, "[t]axable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators. It comes as little surprise, therefore, that 'costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit.' 10 Wright & Miller § 2666, at 203."  Id.

The restraint exhorted by our highest court was echoed by the Third Circuit in the Race Tires case, which referred to Supreme Court precedent that "has accorded a narrrow reading of the cost statute in other contexts." 674 F.3d at 171.  While declining to define "exemplification," the court there drew a distinction between the "physical preparation and duplication of documents" and "the intellectual effort involved in their production," relying upon the case of  Romero v. City of Pomona, 883 F.2d 1418 (9th Cir. 1989), overruled in part on other grounds by Townsend v. Homan Consulting Corp., 929 F.2d 1358, 1363 (9th Cir. 1991) (en banc). Id. at 169.  More recent case law resting on this distinction is discussed in the Clerk's Mylan opinion as well.

Based upon the authority of <u>Race Tires</u>, <u>Romero</u>, and its progeny, discussed in the Clerk's Mylan opinion, all of Impax's costs of demonstratives are denied.  As stated by the court in <u>Pinasco v. California</u>, "[r]etainers and fees are the very 'intellectual efforts' the *Romero* court found to be outside the scope of exemplification costs permitted by 28 U.S.C. § 1920."  No. CIV S 09-0777, 2012 WL 6589801, at *2 (E.D. Cal. Dec. 17, 2012).  Until given further guidance, the Clerk must surmise that such would be the outcome were the Third Circuit to squarely address this issue. Professional fees charged at the rate of $350 per hour are not the "relatively minor, incidental expenses" to which taxable costs are limited, in the Supreme Court's view. <u>Taniguchi</u>, 132 S. Ct. at 2006.   As the Court there cautioned, the discretion granted by Fed. R. Civ. P. 54(d) is "solely a power to decline to tax, as costs, the items enumerated in § 1920," not a power to evade the specific categories of costs set forth by Congress. <u>Id.</u>

### 2.  Trial Consultant

Impax also requests reimbursement of the fees for "Trial Consulting/Support" of consultant Erik Thorsnes of Thorsnes Litigation Services.  [Dkt. Entry 319-7, Ex. F]. The total amount sought of $53,762.50 for Mr. Thorsnes' consulting services represents 195.5 hours of preparing for and attending trial at the rate of $275.00 per hour.  <u>Id.</u> Defense counsel states that "Mr. Thorsnes attended trial every day that Impax offered evidence, and was responsible for presenting electronic exemplifications and demonstratives."  [Dkt. Entry 332-1]; Johnson Reply Decl. at ¶ 6.  He "worked in conjunction with Resonant's graphic artists to prepare exemplifications and demonstratives.  Mr. Thorsnes also prepared exhibits for presentation to the Court, which was an involved and highly technical task given the computer-generated and extremely detailed exhibits created by Impax's experts to disprove Plaintiffs' theory of infringement."  <u>Id.</u>

24

Warner Chilcott's opposition is merely that "[s]uch charges should not be taxable." Pls.' Br. at 21.

The Clerk does not doubt that this trial involved a highly technical subject matter. This is clear from Judge Martini's opinion examining the various scientific testing methods used to prove non-infringement of Impax's product. [Dkt. Entry 301]. However, the Third Circuit has said that § 1920 "does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional." Race Tires, 674 F.3d at 169. "Neither the degree of expertise necessary to perform the work nor the identity of the party performing the work" is a factor of § 1920. Id.

Like the fees of the graphic artists of Resonant Legal Media, Mr. Thorsnes' consultant fees are professional fees, akin to those of experts. The fact that Mr. Thorsnes' services may have been, in defense counsel's words, "reasonably necessary for Impax to present a coherent case to the Court," Johnson Reply Decl. at ¶ 6, does not alone make them taxable. As the Court explained in Taniguchi, "[t]axable costs are a fraction of the **nontaxable expenses borne by litigants for** attorneys, experts, **consultants**, and investigators." 132 S. Ct. at 2006 (emphasis added).

Based upon the foregoing and the analysis set forth in the Clerk's Mylan opinion, the Clerk denies all of the requested consulting fees of Thorsnes Litigation Services.

### 3.  Equipment Rental

The final exemplification cost sought by Impax is its $1,028.95 expense of renting the courtroom trial equipment. The invoice of Aquipt, Inc. appears to indicate that this cost was shared by the parties and Impax's share constituted 25%. [Dkt. Entry 319-7, Ex. F].

25

This type of cost is in a class by itself. It arises neither out of the actual physical preparation of demonstratives, nor the intellectual efforts underlying the preparation of demonstratives.  This is a fee that Impax incurred apart from the hiring of experts and consultants.  The allowance of this expense would not transgress the Supreme Court's proscription against taxing prohibited expert fees.  Furthermore, it is modest in amount. For these reasons, in the exercise of discretion, the Clerk allows this **$1,028.95** cost.

Combining this $1,028.95 exemplification cost with the allowed $13,208.03 cost of copies, the Clerk allows a total of **$14,236.98** pursuant to § 1920 (4).

## V.      Costs of Computer-Assisted Legal Research

Defendant wishes to recoup the $7,506.40 cost of computer-assisted legal research. Def.'s Br. at 7-8.  Impax cites no provision of § 1920 in support and indeed, it cannot because § 1920 does not provide for the taxation of legal research.

Impax relies upon the case of Ricoh Corp. v. Pitney Bowes Inc., Civ. A. No. 02-5639, 2007 WL 1852553, at *4 (D.N.J. June 26, 2007).  As explained in the Mylan opinion, the Clerk declines to follow that holding as this Court did not rely upon the provisions of § 1920.  As set forth there in greater detail, the costs of legal research fall under the category of non-taxable attorney's fees.

Based upon the analysis contained in the Mylan opinion, which also addresses the case law cited by Warner Chilcott, the Clerk disallows this cost.

## VI.     Costs of Postage and Messenger Services

The final costs which Impax asks the Clerk to tax are the $2,190.96 charges for postal, messenger and express mail services.  Def.'s Br. at 7.

26

Like the prior cost, this type of cost finds no place in § 1920. The case of <u>In re Cendant Corp., Deriv. Action Litig.</u>, cited by Impax, is inapposite because it involved the reimbursement of counsel's expense for a class action, not § 1920. 232 F. Supp. 2d 327 (D.N.J. 2002).

As set forth in the Clerk's Mylan opinion, this Court has held that the costs of postage and messenger services are not taxable. Accordingly, the Clerk denies this cost as well.

On a concluding note, the Clerk feels compelled to address Impax's confusion between costs which are taxable under § 1920 and those which constitute non-taxable costs. Defendant cites this Court's allowance of $1.7 million in costs in the case of <u>McCoy v. Health Net, Inc.</u>, 569 F. Supp. 2d 448, 479 (D.N.J. 2008). Def.'s Br. at 8. In that class action suit, said amount was awarded as non-taxable costs under Fed. R. Civ. P. 23(h), not as taxable costs pursuant to § 1920. The Court there relied upon a case which allowed counsel's expenses for prosecuting the litigation, including "substantial fees for experts; substantial costs associated with creating and maintaining an electronic document database; travel and lodging expenses," in addition to copying costs and costs of transcripts. <u>Id.</u>, quoting <u>In re Remeron Direct Purchaser Antitrust Litig.</u>, Civ. A. No. 03-0085, 2005 WL 3008808, at *17 (D.N.J. Nov. 9, 2005). The allowed expenses included costs clearly not taxable pursuant to § 1920, as interpreted by binding Supreme Court and Third Circuit precedent. This is an ineffective example to support the argument that "the costs sought [by Impax] are reasonable in comparison to other litigations." Def.'s Br. at 8.

## VII.   <u>Summary</u>

In sum, the Clerk taxes the following costs in favor of Defendant and against Plaintiffs:

Fees for transcripts, § 1920 (2):                    $30,905.20

27

Fees for witnesses, § 1920 (3):                          $  9,774.19

Fees for exemplification and copies, § 1920 (4):        $14,236.98

**TOTAL:**                                                 **$54,916.37**

　　　For the above reasons, the motion of Defendant Impax Laboratories, Inc.  to tax costs against Plaintiffs Warner Chilcott Company, LLC, Warner Chilcott (US), LLC, and Mayne Pharma International Pty. Ltd. is hereby **GRANTED IN PART AND DENIED IN PART.** An appropriate order follows.

　　　　　　　　　　　　　　　　　　　　　　　WILLIAM T. WALSH

　　　　　　　　　　　　　　　　　　　　　　　By:  S/John T. O'Brien
　　　　　　　　　　　　　　　　　　　　　　　　　Deputy Clerk


April 18, 2013